A02A1698, A02A1699. IN THE INTEREST OF T. N. T., a child (two cases).

(574 SE2d 444)

MIKELL, Judge.

In two related cases, the parents of T. N. T. appeal the termination of their rights to the child. The record shows that the Glynn County Department of Family & Children Services (the "Department") first became involved with T. N. T.'s case in July 2000, when the Brunswick Police Department reported that the child, who was approximately 18 months old at the time, had been abandoned at the front desk of a hotel. On July 31, 2000, the juvenile court concluded that T. N. T. was deprived and awarded temporary custody of the child to the Department. The order was never appealed by the parents. According to T. N. T.'s Department caseworker, Jennifer Minchew, the parents were never married to each other, and the father failed to legitimate the child. Additionally, both parents have biological children with other partners, and the mother's other two children were removed from her custody in Florida after the younger child tested positive for cocaine at birth.

The Department developed a reunification plan for the parents requiring them to refrain from using drugs or alcohol, to obtain and maintain a stable home, and to provide adequate supervision of T. N. T. Initially, the parents refrained from using drugs. The child was returned to them in August 2000. However, according to Minchew, by the middle of September, she was unable to locate the family. When the parents appeared at a panel review in early October, they informed the caseworker that they had been in Florida, although they had not notified the Department of their travel plans. In mid-October, the parents advised Minchew that they had actually

---

[7] See Carlton v. State, 224 Ga. App. 315, 317 (2) (480 SE2d 336) (1997); Underwood v. State, 218 Ga. App. 530, 534 (3) (462 SE2d 434) (1995).

moved to Florida. Minchew instructed them to return to Georgia, but they did not do so. Later that month, authorities in Florida removed T. N. T. from the parents' custody after receiving a report that the mother was abusing drugs. T. N. T. was returned to the Department's custody in Georgia. According to Minchew, the mother planned to visit T. N. T. in Georgia at the end of October, but she was unable to do so because she was incarcerated in Florida.

On January 17, 2001, the Department filed a motion for nonreunification. Following a hearing on February 8, 2001, at which the mother appeared and was represented by counsel, the court granted the Department's motion. The order was not appealed. On June 28, 2001, the Department filed a motion to extend its temporary custody of T. N. T., which was granted following a hearing. The Department filed a petition to terminate the appellants' parental rights to T. N. T. on September 17, 2001. The parents were notified of the petition and summons.

Because both parents were incarcerated in Florida at the time of the hearing, their counsel filed a motion asking the juvenile court to order that they be transported to Georgia for the termination proceedings. The court conducted a hearing on November 15, 2001, and denied the motion and counsel's subsequent requests for reconsideration.

The court conducted the termination hearing on November 29, 2001. The parents were not present, but they were represented by counsel. At the outset of the hearing, the court took judicial notice of all prior orders entered in the case without objection. Minchew testified that after T. N. T. was returned to the Department's custody in October 2000, Minchew spoke to the mother "several times sporadically over the course of 2001," and that by March 2001, the parents had moved from Florida to Tennessee in violation of their probation. Minchew further testified that the parents failed to obtain treatment for drug and alcohol addiction and that the mother told Minchew on more than one occasion that she continued to use drugs and that she "was dying from abusing crack cocaine." According to Minchew, she had no contact at all with the father after T. N. T. was originally placed in the Department's custody.

The evidence showed that the parents failed to maintain a stable home. Minchew testified that the parents stole from their landlord in Brunswick, Georgia, and then moved to Florida, where they temporarily resided with a relative; that after T. N. T. was removed by the authorities in Florida, the mother was incarcerated for theft and resisting arrest; that after the mother was released on probation, the parents moved to Tennessee, where they lived in a hotel and then in a trailer; that they resided in Alabama for a short time; and that they returned to Florida in October 2001, where the mother surrendered

to the authorities for violating her probation. The father was also incarcerated on theft charges.

Minchew reported that neither parent had provided child support for T. N. T., nor had they sent cards or gifts for the child's birthday or for Christmas. In fact, the parents failed to contact T. N. T. at all after she was removed from their custody in October 2000, more than one year before the hearing.

Minchew testified that T. N. T. "[was] doing beautifully" and "thriving" in her foster home; that T. N. T. called her foster parents "mama" and "daddy"; that she considered them to be her real parents; and that she had overcome developmental delays that she exhibited when she was first removed from her parents' custody. Minchew further testified that T. N. T.'s foster parents wished to adopt her, and that the Department would support the adoption. It was Minchew's opinion that if the court did not grant the petition for termination of parental rights, T. N. T.'s deprivation would likely continue, and that it was in the child's best interest to have the stability of a permanent home.

The parents' counsel presented letters in which they claimed that they loved T. N. T. and did not want to lose their parental rights; that they would do anything the court or the Department required of them in order to be reunited with their child; and that they were trying to rectify their problems.[1] Both T. N. T.'s guardian ad litem and her court appointed special advocate submitted written reports to the court recommending termination of the parents' rights to the child.

In the sole error raised on appeal, the parents argue that the juvenile court violated their due process rights by not arranging for their appearance at the termination hearing.[2] Finding no error, we affirm.

"The fundamental idea of due process is notice and an opportunity to be heard." (Citation omitted.) *Nix v. Long Mountain Resources*, 262 Ga. 506, 509 (3) (422 SE2d 195) (1992); *In the Interest of C. C. E.*, 246 Ga. App. 584 (540 SE2d 704) (2000). It is clear from the record that the parents received notice of the petition and hearing. Further, they received an adequate opportunity to be heard through their counsel, who represented them at the hearing, and through the court's consideration of their letters. See *In the Interest of C. C. E.*, supra at 584-585.

---

[1] Counsel admitted that the letters were not sworn affidavits and that they were hearsay. The Department and the guardian ad litem for the child consented to the admission of the letters.

[2] The appellate briefs of both parents raise identical arguments, and we will address the two appeals together. The parents do not contest the sufficiency of the evidence or the merits of the juvenile court's decision.

> Due to [their] own inability to conform to the law, [the parents were] unable to avail [themselves] of the opportunity to appear in person; however, it is undisputed that [they were] represented in all the parental termination proceedings by counsel who appeared in [their] stead. . . . [W]e know of no constitutional entitlement mandating the [parents'] right to appear personally in civil proceedings under such circumstances.

*In the Interest of M. G. F.*, 222 Ga. App. 816, 817-818 (476 SE2d 100) (1996). Accord *In the Interest of C. C. E.*, supra at 585; *In the Interest of F. L. S.*, 232 Ga. App. 100, 101 (502 SE2d 256) (1998). "[The parents] cannot complain about [their] absence at the termination hearing here because that absence was the direct result of [their] criminal conduct in another state." *In the Interest of C. C. E.*, supra at 585. Therefore, the court did not offend due process by refusing to arrange for the parents' attendance at the hearing. See *In the Interest of F. L. S.*, supra at 101.

The appellants' reliance on our decisions in *In the Interest of C. W. D.*, 232 Ga. App. 200, 209-210 (5) (501 SE2d 232) (1998); *In the Interest of B. G.*, 225 Ga. App. 492, 493-494 (1) (484 SE2d 293) (1997); and *In the Interest of M. S.*, 178 Ga. App. 380 (343 SE2d 152) (1986), is misplaced, because those cases involved termination proceedings where the subject children were permitted to testify against their parents outside of the parents' presence. Significantly, none of the parents in the cases cited by the appellants were incarcerated, much less detained in another state. Rather the parents in these cases were present at their respective termination hearings. In the case sub judice, the appellants' inability to attend the termination proceedings "was due solely to [their] inability to conform [their] conduct to the law." *In the Interest of F. L. S.*, supra. The appellants have failed to cite a single case holding that a trial court was required to make arrangements for a parent incarcerated in another state to attend termination proceedings.

Finally, pretermitting the question of error, by failing to specify exactly what testimony they would have provided or how their presence would have affected the outcome of the proceeding,[3] T. N. T.'s parents have failed to demonstrate any harm caused by their absence. *In the Interest of F. L. S.*, supra; *In the Interest of R. J. P.*, 222 Ga. App. 771, 773 (3) (476 SE2d 268) (1996).

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

---

[3] The parents merely contend that their presence at the hearing "would have provided the [j]uvenile [c]ourt a clearer and more convincing picture to justify termination based on [their] alleged drug problem."

Decided November 15, 2002.

*Donald C. Gibson*, for appellants.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, James A. Chamberlin*, for appellee.