A05A2328. IN THE INTEREST OF J. D. F. et al., children.
(626 SE2d 616)

PHIPPS, Judge.
The biological father of M. L. S., age eight, H. N. F. S., age seven, and J. B. S., age five, appeals the juvenile court's order terminating his parental rights.[1] He claims that there was insufficient evidence to

---

[1] The order also terminated the parental rights of the biological/putative father of J. D. F. and the parental rights of the mother of all four children, but they are not parties to this appeal.

support the court's findings that (1) the children's deprivation was likely to continue and (2) that it was in the best interests of the children to terminate his parental rights. For reasons that follow, we reverse.

In reviewing the juvenile court's decision, we must determine

whether, after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.[2]

In December 2002, the Henry County Department of Family & Children Services (DFCS) opened a case on this family due to neglect and inadequate housing. During an announced home visit in April 2003, the home was found dirty and roach-infested and the mother's whereabouts were unknown. The father was incarcerated. In May 2003, DFCS filed a petition for deprivation, seeking temporary custody of the children.

In orders filed in May and June 2003, the children were adjudicated deprived, and temporary custody was granted to their maternal grandparents. Pursuant to an amended order, filed in August 2003, the children were placed in the temporary custody of DFCS because the maternal grandparents lacked suitable housing. DFCS was ordered to prepare a reunification case plan, and the children were placed in foster care.

A reunification case plan was developed, and the court ordered all parties to the plan to comply with its provisions. The father was not designated as the responsible party for any of the actions required by the plan; only the mother and DFCS were so designated. Upon receipt of a letter from the father, the court ordered DFCS to provide him with a copy of all orders, case plans and panel recommendations and findings and to formulate a case plan for the father (if one had not already been formulated) and send it to him. Although there was only one case plan that appears to have been developed solely for the mother, a DFCS caseworker testified that the same plan applied to the father. The father testified that he later received a copy of the case plan in prison. The goals of the plan included maintaining a source of income for the children, maintaining appropriate housing, attending

---

[2] *In the Interest of R. S.*, 255 Ga. App. 756, 756-757 (566 SE2d 461) (2002) (citation omitted).

parenting classes, cooperating with social workers, completing a drug and alcohol treatment program, submitting to random drug screens and remaining drug and alcohol free for six consecutive months.

In his letter to the court, the father implored the court to allow him to maintain a relationship with his children and asked for guidance on how he could communicate with them. The court denied his request that his children be brought to visit him in prison, but allowed him to write to them. At the termination of parental rights hearing, the DFCS caseworker testified that the father had sent the children over 40 letters and that they had sent letters back to him. The father testified that he also sent books and other small gifts to the children.

In March 2004, a judicial citizen review panel recommended that the parents' rights be terminated because the mother had made no progress on the case plan and had not kept in contact with the children and the father remained incarcerated. The children were noted to be doing well in foster care. In September 2004, the court ordered the case plan be changed to nonreunification. In December 2004, DFCS filed a petition for termination of parental rights.

At the termination of parental rights hearing in March 2005, two people testified: a DFCS caseworker and the father. The caseworker testified that the father had not made any child support payments and had not completed any goals of the case plan. She also testified that the foster parents had taken two of the children to visit the father in prison twice, but that DFCS had obtained a court order prohibiting future visits.[3] DFCS studied several possible placements for the children with relatives, but found none that was suitable.

The father testified that he had completed a "motivation for change" class for substance abuse and an anger resolution class while in prison. He also testified that he was taking classes to obtain his GED and had enrolled in a family violence class, which he understood was similar to a parenting skills class. He submitted documentation from the prison supporting his testimony.

The father testified that he had four prior criminal convictions, two in 1990 and two in 1992. For those convictions, he served one year on probation, one year in prison (on a five-year sentence) and 120 days in boot camp (on concurrent three-year sentences). In April 2001, the father was sentenced to serve five years on a burglary conviction. He

---

[3] Evidently DFCS had a policy against taking children to a correctional facility for visitation.

was serving that sentence when DFCS initiated this case. At the time of the termination hearing, the father was scheduled to be released in December 2006.[4]

At the conclusion of the hearing, the juvenile court ordered that the parental rights of the father be terminated. Because no judicial determination has more drastic significance than the permanent severance of a parent-child relationship, the severance of that relationship must be exercised cautiously and scrutinized deliberately.[5]

OCGA § 15-11-94 sets forth the relevant procedure for considering the termination of parental rights. First, the court must determine whether there is clear and convincing evidence of parental misconduct or inability.[6] If there is, the court must then consider whether termination of parental rights is in the best interest of the child.[7] The court determines parental misconduct or inability by finding that (1) the child is deprived; (2) the lack of parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional or moral harm to the child.[8]

1. The father claims that the court should not have terminated his parental rights because there was not clear and convincing evidence that the past deprivation was likely to continue. He correctly points out that "[e]vidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in [his] natural child; clear and convincing evidence of *present* unfitness is required."[9] And "[i]mprisonment alone does not automatically authorize a termination of parental rights premised upon parental unfitness; there must be circumstances in aggravation."[10]

One aggravating circumstance that may be considered is whether the incarcerated parent has made an effort to communicate with the children and, despite imprisonment, maintain a parental bond.[11] The father's ability to visit with his children while incarcerated was

---

[4] In his appellate brief, the father states that he has been transferred to a transitional center and that "this indicates that he has a possibility of parole long before his maximum parole date of December 17, 2006." This information was not presented to the juvenile court, and we therefore cannot consider it on appeal.

[5] *In the Interest of K. M.*, 240 Ga. App. 677, 679-680 (523 SE2d 640) (1999).

[6] OCGA § 15-11-94 (a).

[7] Id.

[8] OCGA § 15-11-94 (b) (4) (A).

[9] *In the Interest of R. A.*, 226 Ga. App. 18, 20 (486 SE2d 363) (1997) (citations and punctuation omitted).

[10] Id. (citations omitted).

[11] *In the Interest of D. M. W.*, 266 Ga. App. 456, 459 (2) (597 SE2d 531) (2004).

eliminated by DFCS and the court; thus, his only means of communication was through correspondence. It is undisputed that his efforts to communicate with the children in this manner were extensive. In fact, when asked if the father's communication with his children was better than average for an incarcerated parent, the caseworker responded that "his ability to communicate with the children is beyond above average."

Another aggravating circumstance that may be considered is the failure to comply with goals in a reunification plan.[12] The reunification plan here was clearly formulated solely for the mother, but the father nonetheless was required to comply with it without any modification in consideration of his incarceration. The DFCS caseworker acknowledged that it was difficult to complete a case plan in prison and testified that she did not know what classes were offered in prison that might meet the requirements set forth in the plan. Despite the lack of assistance from DFCS, the father made significant efforts to comply with the goals of the plan. The father has not provided financial support to the children while incarcerated, but there is no evidence that he failed to support them prior to his incarceration or that he would be unable or unwilling to do so after his release.

Aggravating circumstances may also include "a history of incarcerations for repeated criminal offenses and a determination that it is likely such criminal [activity] will continue upon release."[13] The father's prior convictions were in 1990 and 1992, before his children were born, and did not involve lengthy periods of incarceration. Although the trial court made a finding that the deprivation would continue due to the father's current incarceration, it did not find it likely that the father would engage in criminal activity upon his release.

DFCS focuses on the fact that the father is still incarcerated and that it will take time for him to complete a case plan once he is released, during which time the children will remain in foster care. But this is not a case where the father's release date is many years away.[14] In addition, the record indicates that the children are doing well in foster care. There is no evidence, however, that the foster parents are ready or willing to adopt the children.[15]

---

[12] Id.

[13] In the Interest of M. C. L., 251 Ga. App. 132, 134 (1) (a) (553 SE2d 647) (2001) (citation and punctuation omitted).

[14] Cf. In the Interest of D. M. W., 266 Ga. App. at 460 (3) (release date nine years in the future).

[15] Cf. In the Interest of D. T., 251 Ga. App. 839, 842 (555 SE2d 215) (2001) (foster mother told court she loved children very much and wanted to adopt them); In the Interest of D. M. W.,

"Termination of parental rights is a 'remedy of last resort' that cannot be sustained where there is no clear and convincing evidence that the cause of the deprivation is likely to continue."[16] Here, the trial court relied solely upon the father's current incarceration to support its conclusion that the children's deprivation was likely to continue. Absent aggravating circumstances, and given the father's efforts while incarcerated to complete a case plan clearly not designed for him and his scheduled release date of December 2006, we conclude that there is not clear and convincing evidence at this time that the deprivation as to the father is likely to continue. Termination of his parental rights was therefore error. We reverse the judgment and remand the case for the establishment of a reunification plan for the father, subject to whatever disposition is warranted by future events and those occurring since the termination hearing.[17]

2. Our decision in Division 1 renders the father's remaining claim moot.

*Judgment reversed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JANUARY 30, 2006.

*Gerald P. Privin*, for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Cordell & Cordell, Jason T. Harper*, for appellee.

---

supra (foster parents stood ready to adopt child upon termination of his parents' rights).
[16] *In the Interest of T. J. J.*, 258 Ga. App. 312, 315 (1) (574 SE2d 387) (2002) (citation omitted).
[17] See id. at 315-316.