639 S.E.2d 601 (2006)
In the Interest of T.C., a child.
No. A07A0027.
Court of Appeals of Georgia.
November 30, 2006.
*602 Joshua E. Kight, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charles C. Butler, for appellee.
BERNES, Judge.
The father of two-year-old T.C. appeals the order of the Juvenile Court of Johnson County terminating his parental rights. The father contends that the trial court erred in determining (i) that the cause of T.C.'s deprivation was likely to continue and will not likely be remedied, and (ii) that continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. We affirm for the reasons set forth below.
The termination of parental rights is a two-step process. "OCGA § 15-11-94(a) requires the trial court to consider whether there is clear and convincing evidence of parental misconduct or inability as provided in subsection (b) of that Code section. If such is shown, then the court considers whether termination of parental rights is in the best interest of the child." In the Interest of J.K., 278 Ga.App. 564, 566(1), 629 S.E.2d 529 (2006). A showing of parental misconduct or inability under OCGA § 15-11-94(b)(4)(A) requires:
(i) that the State must show that the child is a deprived child; (ii) the State to prove that cause of the child's deprived state is the lack of parental control or care; (iii) a *603 finding that if the child is returned to the conditions in place at the time of the filing of the deprivation petition, such deprivation is likely to continue, and not be remedied; and (iv) a finding that the continued deprivation will likely cause serious physical, mental, emotional, or moral harm to the child.
Id. at 567(1), 629 S.E.2d 529.
On appeal we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.
(Citation and punctuation omitted.) In the Interest of D.W., 235 Ga.App. 281, 509 S.E.2d 345 (1998).
So viewed, the evidence shows that T.C. was born in Georgia in March 2004, and that two days after his birth came into the temporary custody of the Johnson County Department of Family and Children Services ("DFCS"). The father was in Florida when T.C. was born and could not leave the state because he was on probation. The mother returned to Florida approximately two weeks later and has had no further contact with the child.
The juvenile court subsequently found T.C. to be deprived. In the unappealed deprivation order, the juvenile court found that the mother and father were in jail in Florida, that both parents had other children who were in the custody of the State of Florida due to deprivation, and that both parents had long-standing substance abuse problems.
The father testified at the January 27, 2006 termination hearing that he became addicted to cocaine in 2003. The father admitted that he was under the influence of crack cocaine when he was arrested in Florida and charged with felony child neglect. Before his arrest, the father's two other children by T.C.'s mother were in the house while he was using the drugs. The State of Florida removed the children from parental custody, and the father subsequently failed to complete his reunification case plan.
The father was placed on probation in connection with the child neglect charges. The father initially violated his probation in July 2003 for testing positive for cocaine use and was sent to a drug rehabilitation center. After the father violated his probation a second time, he was incarcerated from April 2004 through December 2005. After his release, the father was employed full-time as a painter and purchased a truck. He also rented a room at a fishing camp in Panama City, but admitted that the room was not a suitable home for a child. The father testified that he was currently "free of drugs," and that he would be willing to work with the court to establish a connection with T.C. However, the father has never met T.C., has never requested visitation with T.C., and has never paid child support for T.C. The father sent two birthday cards to the child.
T.C. has been in the same foster placement since coming into DFCS custody. T.C. has bonded with his foster parents, who desire to adopt the child.
1. The father argues that the evidence was insufficient to support the juvenile court's finding that T.C.'s deprivation was likely to continue and not be remedied.[1] See OCGA § 15-11-94(b)(4)(A)(iii). We disagree.
[E]vidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in his natural child; clear and convincing evidence of present unfitness is required. And imprisonment alone does not automatically authorize a termination of parental rights premised upon parental unfitness; there must be circumstances in aggravation.
(Punctuation and footnotes omitted; emphasis in original.) In the Interest of J.D.F., 277 Ga.App. 424, 427(1), 626 S.E.2d 616 (2006). Nevertheless, "the trial court is entitled to consider evidence of the [father's] past actions in determining whether the deprivation *604 is likely to continue. It is not bound by mere promises to do better in the future." In the Interest of A.M., 259 Ga.App. 537, 542, 578 S.E.2d 226 (2003).
The father contends that his imprisonment should not compel termination of his parental rights because no aggravating circumstances were present. Notwithstanding this assertion, the father's failure to support T.C. while in prison and his lack of relationship with the child may be considered aggravating circumstances that show that the father's incarceration had a negative effect on the child. See In the Interest of J.K., 239 Ga.App. 142, 145(1), 520 S.E.2d 19 (1999). Furthermore, as the juvenile court found, after the father was released, he made no effort to contact or visit T.C., or to pay child support to any of his children, including T.C. Thus, the father's contention that T.C.'s deprivation is likely to be remedied now that he has been released from prison is contradicted by much of the father's conduct. Compare In the Interest of J.D.F., 277 Ga.app. at 428(1), 626 S.E.2d 616 (no evidence father would be unable or unwilling to support child after release from prison).
The trial court also based its ruling on the father's failures in his relationship with his other children by T.C.'s mother. The father admitted that he had neglected those children by choosing to smoke crack cocaine while they were in the house. See In the Interest of D.L.D., 248 Ga.App. 149, 153, 546 S.E.2d 11 (2001) (court may consider history of drug abuse in finding deprivation likely to continue). The father further admitted that he had a Florida case plan for reunification with the two children but did not complete the plan. Additionally, he also failed to pay child support for his children in Florida. The father's failure to provide for these other children was properly considered by the trial court as evidence that the deprivation of T.C. was likely to continue. In the Interest of S.L.B., 265 Ga.App. 684, 688(1), 595 S.E.2d 370 (2004) (that mother had three older children who were not in her care or support indicated that she would likewise be unable to care for the child); In the Interest of T.L.H., 240 Ga.App. 201, 203, 523 S.E.2d 50 (1999) (father's failure to support four other children indicates deprivation of child likely to continue).
The father points to evidence demonstrating that DFCS established a nonreunification plan before contacting the father and then denied the father's requests for information. He argues that because he was not given a chance "to work a case plan" the state was left without evidence relevant to his parenting ability. But, "[DFCS] is not obligated in every case to create a plan for reunification." In the Interest of T.B., 267 Ga.App. 484, 488(3), 600 S.E.2d 432 (2004). See also In the Interest of F.C., 248 Ga.App. 675, 679(2), 549 S.E.2d 125 (2001) ("OCGA § 15-11-58 does not impose upon termination proceedings the same procedures that apply to disposition orders and recommendations regarding reunification."). Furthermore, the evidence demonstrates that DFCS contacted the father when T.C. was taken into custody and mailed the initial nonreunification case plan to him in Florida. According to the caseworker, the father was informed that he needed to file a request to legitimate T.C. within 30 days so that he could become involved in the case, but the father failed to comply, and only belatedly filed a petition to legitimate T.C. almost a year later. Thus, it appears that the father was afforded an opportunity to participate in the case but failed to seize it.
The father also argues that there was evidence of recent improvements made in his life that ran contrary to a finding that a lack of care would continue after he was released from prison. The father points to his testimony that following his release he had found full-time employment, purchased a truck, and rented a place to live. He further contends that he is now drug free. Nevertheless, "in considering recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation." (Footnote omitted.) In the Interest of A.M.L., 242 Ga.App. 121, 124(1)(c), 527 S.E.2d 614 (2000). Given the evidence, including the father's neglect of two of his other children, his history of substance abuse, and his failure to contact or provide support for T.C. before or after release, we conclude that any rational trier of fact could find by clear and convincing evidence that T.C.'s deprivation was likely to continue and not be remedied.
*605 2. The father also contends that clear and convincing evidence did not support the juvenile court's finding that continued deprivation was likely to cause harm to T.C. Again, we disagree. The father has established no relationship with T.C. On the other hand, T.C. has bonded with his foster parents, who are willing to adopt. "[T]his Court has previously ruled that where, as here, the evidence showed no parental bond between parent and child, the child had adapted well to foster care, and the foster parent wished to adopt, this was sufficient to support the juvenile court's conclusion that continued deprivation was likely to harm the child[ ]." (Citation and punctuation omitted.) In the Interest of T.J., 281 Ga.App. 308, 315(2), 636 S.E.2d 54 (2006). See also In the Interest of C.A.W., 272 Ga.App. 4, 7, 611 S.E.2d 154 (2005).
Judgment affirmed.
RUFFIN, C.J., and BLACKBURN, P.J., concur.
NOTES
[1] The father does not challenge that T.C. was deprived by reason of a lack of proper parental care or control. See OCGA § 15-11-94(b)(4)(A)(i), (ii). Nor does he challenge the trial court's finding that termination of parental rights is in the best interest of the child.