650 S.E.2d 397 (2007)
In the Interest of R.N.H. et al., children (two cases).
Nos. A07A1054, A07A1055.
Court of Appeals of Georgia.
July 23, 2007.
*398 Joshua J. Smith, for appellant.
William B. Barnwell, Avrett, Ponder & Withrock, Dalton, for Appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Sr. Asst. Gen., Bruce A. Kling, Dalton, for Appellee.
BERNES, Judge.
In these companion cases, the mother and father of the minor children R.N.H., T.K.L.H., J.A.H., and C.J.W.H. appeal the juvenile court's order terminating their parental rights. Concluding that there was sufficient evidence to support the juvenile court's decision, we affirm.
On appeal[,] we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.
(Citation and punctuation omitted.) In the Interest of T.C., 282 Ga.App. 659, 660, 639 S.E.2d 601 (2006).
So viewed, the record reflects that on July 20, 2005, the children were placed in the immediate custody of the Whitfield County Department of Family and Children Services ("DFCS") after the juvenile court found that the appellants were abusing methamphetamine and prescription medications; the infant child C.J.W.H. was "covered from head to toe with untreated psoriasis"; T.K.L.H. suffered from an untreated ankle fracture; and the appellants were residing in deplorable conditions at a motel. DFCS subsequently filed a deprivation petition, and the juvenile court conducted an evidentiary hearing in which the appellants were present with counsel. The juvenile court found that the appellants both suffered from untreated drug abuse problems and had failed to take requested drug tests. Consequently, the juvenile court ruled that the children were deprived and granted temporary custody to DFCS. The appellants consented to the juvenile court's findings and did not file an appeal from the deprivation order.
DFCS developed a reunification case plan for the appellants that was discussed with and reviewed by both of them. Among other things, the plan required the appellants to submit to random drug screens; obtain a substance abuse assessment and follow the treatment recommendations; remain drug and alcohol free for at least six consecutive months; successfully complete parenting classes; obtain and maintain stable housing and income for a minimum of six months; pay child support; and complete a psychological evaluation. On September 19, 2005, the juvenile court entered a supplemental order incorporating the terms of the case plan and additionally requiring the appellants each to pay $50 per week in child support.
Based on the appellants' failure to follow the reunification plan, DFCS moved to terminate their parental rights on May 18, 2006. At the adjudication hearing held on August 31, 2006,[1] the appellant mother admitted that *399 she had failed to visit the children or communicate with them in any way since the time they entered DFCS custody in July 2005. She further conceded that she had not obtained a substance abuse assessment, had not gone for requested drug screens, had failed to obtain a psychological evaluation although she had suffered from depression, and had paid only a total of $80 in child support even though she "could have paid more." In addition, the appellant mother testified that she had moved five times since the children came into DFCS custody and currently lived with the appellant father in a one-bedroom "bachelor apartment." Finally, she admitted that she was not currently employed.
The appellant father also testified at the adjudication hearing. He admitted that since the time the children had come into DFCS custody, he had been incarcerated on two occasions, the first time for domestic violence and the second time for violating his parole. He remained on probation at the time of the hearing. The appellant father further conceded that he had only visited the children three times since they came into custody, was currently residing with the appellant mother in housing that they were unable to afford, had not obtained a substance abuse assessment or psychological evaluation, had failed to complete parenting classes, had not submitted to any requested drug screens, and had paid a total of only $30 in child support. At the time of the hearing, he had been employed for two days, and before that had maintained only sporadic, low-wage employment due to his repeated incarcerations.
The case manager for the children likewise testified that both of the appellants had failed to complete any of their case plan goals, despite her repeated efforts to contact and assist them. According to the case manager, all four children have been harmed by the appellants' lack of contact with them, and all four are currently living with the same foster parents who want to adopt them, which would be in their best interests. Agreeing with the case manager, the guardian ad litem for the children recommended that the termination petition be granted so that the children could be adopted.
After hearing this testimony and taking judicial notice of its prior orders, the juvenile court granted the termination petition and authorized DFCS to pursue adoption for the children. These companion appeals followed in which the appellants contend that there was insufficient evidence to support the grant of the termination petition. Their contention is without merit.
Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is present clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-94(a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94(b)(4)(A). In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.
(Citation omitted.) In the Interest of K.W., 283 Ga.App. 398, 399(1), 641 S.E.2d 598 (2007). We will address the various factors separately.
1. Evidence of Parental Misconduct or Inability.
(a) The Children Must Be Deprived. The juvenile court found that the children were deprived in its order granting the deprivation petition and in a subsequent extension order. Those orders were not appealed. And, as explained infra, DFCS has shown that the conditions upon which the earlier finding of deprivation was based still existed at the time of the termination proceedings. Hence, the fact that the appellants did not appeal the earlier deprivation order precludes them from challenging the juvenile *400 court's finding of deprivation. In the Interest of R.C.M., 284 Ga.App. 791, 798(III)(1), n. 6, 645 S.E.2d 363 (2007); In the Interest of A.K., 272 Ga.App. 429, 434(1)(a), 612 S.E.2d 581 (2005).
(b) Lack of Proper Parental Care or Control Must Cause the Deprivation. There was ample evidence supporting the juvenile court's finding that the appellants' lack of parental care was the cause of the children's deprivation. In analyzing whether this factor had been met, the juvenile court was to consider whether there was evidence of
excessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotics or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child.
(Footnote omitted.) In the Interest of J.F., 283 Ga.App. 759, 764(b), 642 S.E.2d 434 (2007). See OCGA § 15-11-94(b)(4)(B)(ii). Additionally, because the children were not in the appellants' custody, the juvenile court had to inquire into whether the appellants had failed, for a period of one year or longer prior to filing of the termination petition,
(i) [t]o develop and maintain a parental bond with the child[ren] in a meaningful, supportive manner; (ii)[t]o provide for the care and support of the child[ren] as required by law or judicial decree; and (iii)[t]o comply with a court ordered plan designed to reunite the child[ren] with [the appellants].
OCGA § 15-11-94(b)(4)(C).
Here, the appellants consented to the juvenile court's finding in the unappealed deprivation order that they have a methamphetamine abuse problem and have failed to have it treated. And, at the adjudication hearing, the case manager testified, and the appellants conceded, that they have failed to submit to requested drug screens or obtain a substance abuse assessment with follow-up treatment. As to the factors enunciated in OCGA § 15-11-94(b)(4)(C), the testimony of the appellants and the case manager set out above demonstrated that the appellants had little or no contact with their children since the time they came into custody, paid a woefully inadequate amount of the child support ordered by the juvenile court, and failed to complete any of their case plan goals. Under these combined circumstances, the trial court was entitled to conclude that the appellants' lack of proper parental care caused the children's deprivation. See In the Interest of C.G., 279 Ga.App. 730, 732(1), 632 S.E.2d 472 (2006) (parent's unrehabilitated drug problem demonstrated that the lack of proper parental care or control was the cause of the deprivation); In the Interest of A.C., 230 Ga.App. 395, 397(1), 496 S.E.2d 752 (1998) (evidence that parent failed to visit with child for a year, failed to pay child support, and failed to meet case plan goals demonstrated that the lack of parental control caused the deprivation); In the Interest of J.J., 259 Ga.App. 159, 162, 575 S.E.2d 921 (2003) (finding that the deprivation was caused by a lack of parental control when the mother failed to pay child support or complete the reunification plan).
(c) Cause of the Deprivation Must Be Likely To Continue. There also was ample evidence supporting the juvenile court's finding that the deprivation was likely to continue. Notably, "[a] juvenile court may consider past conduct of a parent in deciding whether deprivation is likely to continue." In the Interest of T.B., 267 Ga.App. 484, 486(1), 600 S.E.2d 432 (2004). Thus, the evidence of the appellants' untreated methamphetamine abuse problem, their failure to comply with their case plan goals, and their failure to routinely and consistently visit their children while in DFCS custody supported the trial court's finding that the deprivation was likely to continue. See In the Interest of K.W., 283 Ga.App. at 401(1)(c), 641 S.E.2d 598. Moreover, the appellant father's repeated incarcerations counseled in favor of the trial court's finding. See In the Interest of T.G.Y., 279 Ga.App. 449, 451(1)(a)(i), 631 S.E.2d 467 (2006). Finally, the trial court's finding was buttressed by evidence that at the time of the hearing, the appellant mother was unemployed, the appellant father had only been in his current job for two days, and the appellants continued to live in housing far too small for four children yet too expensive for them to currently afford. *401 See In the Interest of J.W.M., 273 Ga.App. 20, 22-23(1)(c), 614 S.E.2d 163 (2005).
In response to the question of what efforts she has made or plans to make in order to regain custody of her children, the appellant mother responded that she simply "hope[s] for the best," has future plans of getting a new car and home, of going back to work, and of paying back money owed to others. She also stated that she was now willing to comply with all future drug screening requests. Similarly, the appellant father testified that the appellant mother and he have future plans of getting a new, larger home, and that he "hopefully" will have steady work so that he can meet his family's needs. While this testimony reflects a pledge by the appellants to exercise personal responsibility and improve their circumstances, "[t]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact. Ultimately, the trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court." (Citations and punctuation omitted.) In the Interest of D.L.T., 283 Ga.App. 223, 227(1), 641 S.E.2d 236 (2007). Hence, the trial court committed no error in assigning little weight to the appellants' "assertions of sudden parental fitness" and determining that the deprivation was likely to continue. (Citation and punctuation omitted.) Id.
(d) Continued Deprivation Must Be Likely To Harm the Children. There likewise was sufficient evidence in the record showing that continued deprivation was likely to result in serious physical, mental, or moral harm to the children. The appellant father admitted that his children were being harmed. Furthermore, evidence of the appellants' failure to obtain treatment for their methamphetamine abuse problem, combined with their failure to comply with any other essential elements of their case plan, demonstrated "an unresolved pattern of misbehavior that would be likely to cause severe emotional harm to the children." (Citations and punctuation omitted.) In the Interest of K.W., 283 Ga.App. at 401-402(1)(d), 641 S.E.2d 598. Finally,
"[t]his Court has previously ruled that where, as here, the evidence showed no parental bond between parent and child, the child had adapted well to foster care, and the foster parent wished to adopt, this was sufficient to support the juvenile court's conclusion that continued deprivation was likely to harm the child."
(Citations and punctuation omitted.) In the Interest of T.C., 282 Ga.App. at 663(2), 639 S.E.2d 601.
2. Termination Must Be in the Best Interests of the Children. The same evidence set forth above supported the juvenile court's finding that the termination of the appellants' parental rights would be in the best interests of the children. In the Interest of D.W., 235 Ga.App. 281, 283, 509 S.E.2d 345 (1998). Additionally, the guardian ad litem's recommendation that the appellants' parental rights be terminated supported the juvenile court's finding. See In the Interest of K.W., 283 Ga.App. at 402(1)(e), 641 S.E.2d 598.
Judgment affirmed.
BLACKBURN, P.J., and RUFFIN, J., concur.
NOTES
[1] We note that there are multiple places in the transcript of the adjudicatory hearing where portions of questions or testimony have been transcribed as "inaudible" by the reporter. While the transcript as a whole is complete enough to allow this Court to review the sufficiency of the evidence, we note that it is of critical importance that the record in termination proceedings be transcribed fully and accurately, given the stakes involved. If the reporter is having trouble hearing the attorneys or the witnesses, the reporter should immediately call this to the attention of the juvenile court, so that the issue can be quickly addressed and resolved.