677 S.E.2d 396 (2009)
In the Interest of H.L.H. et al., children.
No. A09A0479.
Court of Appeals of Georgia.
April 6, 2009.
*397 William R. Thompson, Jr., Calhoun, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Lorie A. Moss, Kathryn A. Fox, Asst. Attys. Gen., Jones & Erwin, Anthony B. Erwin, Calhoun, for appellee.
BERNES, Judge.
The biological mother of H.L.H. and J.M. appeals the juvenile court's order terminating her parental rights.[1] Because there was sufficient evidence to support the juvenile court's decision, we affirm.
In considering the mother's appeal, we view the evidence in the light most favorable to the juvenile court's disposition and determine whether any rational trier of fact could have found by clear and convincing evidence that the mother's right to custody should have been terminated. We neither weigh the evidence nor determine the credibility of any witnesses, but instead defer to the juvenile court's findings of fact.
(Citation omitted.) In the Interest of N.S.E., 287 Ga.App. 186, 187, 651 S.E.2d 123 (2007).
So viewed, the record reflects that in the early morning hours of August 22, 2004, the teenage mother went to a local Wal-Mart with her two minor children, H.L.H. and J.M. Police officers subsequently stopped the mother and children as they were walking down the side of the road. Upon investigation, the officers discovered that the mother had stolen merchandise from the Wal-Mart. The officers arrested the mother for shoplifting, and the two children were taken into the emergency custody of the Gordon County Department of Family and Children Services ("DFCS"). At the time the children were taken into emergency custody, the mother lacked stable employment and was living with a boyfriend and the children in a small motel room. H.L.H. was approximately one and a half years old, and J.M. was approximately one month old.
With the mother's consent, the juvenile court entered an order adjudicating the children deprived on the grounds that the mother was currently incarcerated on the pending shoplifting charge and lacked stable housing and employment. The children were placed with foster parents and have remained with them throughout the entire course of the instant case.
DFCS developed a reunification case plan for the mother that, among other things, required her to obtain a steady source of income and stable housing. Following entry of the case plan, the mother was released from jail after pleading guilty to the shoplifting charge and receiving a sentence of five years probation. As a result, the mother's case plan was modified to further require that she comply with all rules and regulations pertaining to her probation.
Based on the mother's failure to follow the case plan, DFCS moved to terminate her parental rights on August 10, 2006. At the hearing on the termination petition conducted on December 20, 2006, the mother testified that she had recently gotten married and given birth to a third child, and that her husband was currently employed but at constant risk of deportation because of his status as an illegal alien. The mother further testified that she was currently unemployed, that she had lived at her current residence for less than two months, and that over the past two years, she had been unable to maintain a job and had lived in at least five different locations. In addition, the mother testified that she had recently violated her probation by moving without permission, failing to pay certain required fines, and being arrested for committing criminal trespass. As a result of violating her probation, the mother testified *398 that she would be required to serve four to six months in a diversion center as soon as the center had available space.
The DFCS case manager likewise testified that while the mother had completed some of her case plan goals, she had failed to comply with the goals of obtaining a steady source of income and stable housing and had recently violated her probation. As such, the mother had failed to alleviate the underlying causes of the deprivation that prevented her from parenting her children. In contrast, the case manager testified that the children and their foster parents had become "a family" and interacted well with one another. Furthermore, the case manager testified that children who remained in prolonged foster care without permanency were in danger of developing significant emotional and behavioral problems.
One of the foster parents also testified at the hearing. The foster parent testified that he and his wife had cared for the children since they first came into foster care, that the children were happy and in good health, and that the children often called him and his wife "[D]addy" and "Mama." He further testified that he and his wife wished to adopt the children.
During the hearing, DFCS introduced into evidence certified copies of the juvenile court's prior orders and copies of the reunification case plans. The mother did not object to their admission.
The juvenile court took the case under advisement. After the mother was released from the diversion center, the juvenile court conducted a second evidentiary hearing on June 20, 2007 in order to obtain updated information concerning the mother's progress. At the hearing, the mother testified that she had been released from the diversion center on March 30, 2007, was currently unemployed, would be moving out of her current apartment within the next week, and had made no plans for where she would live thereafter. The mother further testified that she had separated from her husband, who had recently been charged with several criminal offenses, including forgery for using a false name on checks issued by his employer. The mother also testified that since her release from the diversion center, she had been drinking alcohol heavily and had used both marijuana and cocaine. According to the mother, she had snorted cocaine less than a week before the hearing.
In addition to the mother's testimony concerning substance abuse, the children's court-appointed special advocate ("CASA") testified that the mother admitted to her that she smoked marijuana during her confinement at the diversion center. The CASA also testified that the mother had tested positive for marijuana since her release.
Based on the evidence presented at the two hearings, the juvenile court entered its order terminating the mother's parental rights and authorizing DFCS to pursue adoption for the children on June 25, 2007. This direct appeal followed.[2]
Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is present clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-94(a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94(b)(4)(A). In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.
*399 (Citation omitted.) In the Interest of R.N.H., 286 Ga.App. 737, 739-740, 650 S.E.2d 397 (2007). Here, the mother's sole contention is that there was insufficient evidence to support the juvenile court's finding that the continued deprivation was likely to cause serious harm to the children.
Clear and convincing evidence supported the juvenile court's finding. "Evidence that the mother failed to take the steps necessary for reunification, that the foster parents have provided the child with a stable and secure home, and that they want to adopt the child[ren] ... support[ed] a finding that the child would be harmed by further deprivation." In the Interest of D.L.T., 283 Ga.App. 223, 228(2), 641 S.E.2d 236 (2007). See In the Interest of C.J., 279 Ga.App. 213, 217-218(1), 630 S.E.2d 836 (2006). And the mother's ongoing substance abuse problem, combined with her commission of crimes leading to repeated incarcerations, demonstrated "an unresolved pattern of misbehavior" that further supported such a finding. In the Interest of R.N.H., 286 Ga.App. at 742(1)(d), 650 S.E.2d 397. See In the Interest of R.D.B., 289 Ga.App. 76, 79(1), 656 S.E.2d 203 (2007); In the Interest of D.R.C., 198 Ga.App. 348, 351(4), 401 S.E.2d 754 (1991). Finally, the juvenile court's finding was supported by the case manager's testimony concerning the dangers posed to the children if they were to remain in the inertia of continued, long-term foster care without permanency. See In the Interest of A.K., 272 Ga.App. 429, 438(1)(d), 612 S.E.2d 581 (2005) (noting that the juvenile court is "authorized to consider the adverse effects of prolonged foster care in determining that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm" to children); In the Interest of B.I.F., 264 Ga.App. 777, 781(1), 592 S.E.2d 441 (2003) ("[I]t is well established that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems.").
For these reasons, our review of the record leads us to conclude that there was sufficient evidence to show that the children were likely to suffer serious physical, mental, emotional, or moral harm if the status quo were allowed to continue in perpetuity. "The mother had more than ample time to rehabilitate herself. Her children should not be required to linger indefinitely in foster care." In the Interest of S.S.G.A., 285 Ga.App. 276, 279(1), 645 S.E.2d 724 (2007). The order terminating the mother's parental rights, therefore, is affirmed.
Judgment affirmed.
SMITH, P.J., and PHIPPS, J., concur.
NOTES
[1] H.L.H. and J.M. have different fathers. The juvenile court's order also terminated the fathers' parental rights, but the fathers have not appealed from that order and thus are not parties to the instant appeal.
[2] In 2007, the General Assembly amended OCGA § 5-6-35 (a) to require an application for discretionary appeal in termination cases filed on or after January 1, 2008. See OCGA § 5-6-35(a)(12); Ga. L. 2007, p. 554, §§ 3, 8. See also In the Interest of K.R., 285 Ga. 155, 674 S.E.2d 288 (2009). Before the amendment, orders terminating parental rights were directly appealable as a matter of right. See In the Interest of S.N.S., 182 Ga.App. 803, 357 S.E.2d 127 (1987). Accordingly, the order in the instant termination case was directly appealable because the termination petition was filed before January 1, 2008.