**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**December 30, 2020**

# In the Court of Appeals of Georgia

A21A0140. IN THE INTEREST OF H. A. S., a child.

BARNES, Presiding Judge.

The juvenile court terminated the parental rights of the father of H. A. S. and subsequently denied his motion for new trial. On appeal,[1] the father argues that the juvenile court erred in denying his motion for a continuance of the termination hearing. The father also argues that the juvenile court erred in finding that clear and convincing evidence established that he abandoned the child and that termination of his parental rights was in the child's best interest. For the reasons discussed more fully below, we vacate and remand for further proceedings consistent with this opinion.

---

[1] This Court granted the father's application for discretionary appeal. The juvenile court also terminated the parental rights of the mother, but she has not appealed.

Viewed in the light most favorable to the juvenile court's disposition of the case,[2] the record reflects that H. A. S. was born on October 24, 2013 and resided with his father for most of his life prior to the events at issue in this case. In August 2018, when H. A. S. was four years old, the father was arrested and incarcerated on drug possession and other charges in Dade County. The father asked his girlfriend to care for H. A. S. after his arrest. The girlfriend contacted Walker County Department of Family and Children Services ("DFCS") after she observed H. A. S. engaging in inappropriate sexual behavior with another child in her home.

H. A. S. came into DFCS custody on August 11, 2018. The juvenile court found H. A. S. to be dependent and granted DFCS temporary custody of the child,[3] and DFCS placed the child in a foster home. Once in foster care, H. A. S. made allegations consistent with sexual abuse by another relative. H. A. S. was referred for a psychosexual evaluation and diagnosed with post-traumatic stress disorder. H. A. S. also received therapy to address his sexual acting out and other inappropriate behavior and his fear and anxiety.

---

[2] See *In the Interest of D. M.*, 339 Ga. App. 46, 46 (793 SE2d 422) (2016).

[3] In its dependency removal order, the juvenile court noted that the whereabouts of the mother were unknown.

DFCS developed a case plan for the father. The case plan required the father to provide stable housing, maintain stable income, resolve all pending criminal charges, complete a psychological and parental fitness assessment and follow all recommendations, complete substance abuse treatment, submit to DFCS drug screens, and participate in parenting services. The case plan also noted that visitation between the child and father was not currently possible because of the father's incarceration.

In September 2018, the father pled guilty to the Dade County charges. As part of his sentence, the father completed a substance abuse treatment program at a prison treatment facility. The father also completed two levels of parenting classes and wrote two letters to H. A. S.

In May 2019, DFCS filed its petition to terminate the parental rights of the mother and father of H. A. S. In its petition, DFCS alleged that termination was appropriate with respect to the father because he had subjected H. A. S. to aggravated circumstances by abandoning him. DFCS also alleged that termination of the father's parental rights was appropriate on the separate ground of dependency due to lack of proper parental care or control.

On October 30, 2019, after completing the prison substance abuse treatment program, the father was extradited to Tennessee and held on outstanding warrants for

3

identity theft and other charges that predated his Dade County case. Shortly thereafter, on November 5, 2019, a hearing was conducted on the termination petition. The father's counsel sought a continuance so that the father could be present at the hearing. The juvenile court denied the motion, and the termination hearing proceeded without the father.[4]

At the hearing, the DFCS case manager assigned to the case testified that H. A. S. had been in DFCS custody for 15 months, that the father had been incarcerated during that entire time either in jail or in the prison substance abuse treatment facility, and that the father had not completed most of his case plan or had visitation with the child. The case manager acknowledged that the father had completed the prison substance abuse treatment program and two levels of parenting classes, had expressed to her that he did not want to lose his parental rights, and had sent two letters to H. A. S. The case manager testified that she did not provide the first letter to H. A. S. at the direction of the child's therapist and had not provided the second letter to the child because it had been recently received.

---

[4] The mother also was not present at the termination hearing.

4

Following the conclusion of the hearing,[5] the juvenile court entered its order terminating the parental rights of the mother and father. In its order, the juvenile court found that the father had subjected H. A. S. to aggravating circumstances by abandoning him and that termination was in the best interest of the child. The juvenile court did not address whether termination would be appropriate on the ground of dependency due to lack of proper parental care or control.

Following entry of the termination order, the father filed a motion for new trial, contending that there was insufficient evidence to support the termination of his parental rights. The father also stated in his motion that he had been incarcerated in Tennessee at the time of the termination hearing, but that he was no longer in custody and wished to have an opportunity to present evidence at a hearing. In January 2020, the trial court conducted a hearing on the new trial motion in which the father testified. The father testified that he had been released from jail in Tennessee in December 2019, and he currently lived in a group home and was receiving outpatient substance abuse treatment as part of his probation for the Dade County offenses. The father testified that the Tennessee charges remained pending but as of yet he had not

---

[5] The licensed counselor who provided therapy to H. A. S. and the child's foster mother also testified at the termination hearing.

5

been indicted in that case. The father expressed his desire to continue working on his DFCS case plan and ultimately regain custody of H. A. S. After the hearing on the motion for new trial, the juvenile court denied the motion.

1. The father contends that the trial court committed reversible error in denying his motion for a continuance of the termination hearing. We disagree.

"We will not disturb a juvenile court's denial of a motion for continuance absent abuse of discretion." (Citation and punctuation omitted.) *In the Interest of K. G.*, 344 Ga. App. 674, 675 (1) (811 SE2d 451) (2018). Here, the juvenile court acted within its discretion in refusing to continue the termination hearing, given that the father was incarcerated out-of-state when the hearing occurred and his attorney was present at the hearing to cross-examine witnesses on his behalf and otherwise represent his interests. "Georgia courts have held consistently that an incarcerated parent, if represented by counsel, has no constitutional entitlement to appear personally at a hearing terminating parental rights." *In the Interest of J. H.*, 273 Ga. App. 424, 426 (615 SE2d 231) (2005). See *In the Interest of T. N. T.*, 258 Ga. App. 396, 399 (574 SE2d 444) (2002) (denial of continuance did not offend due process, where parents were incarcerated in another state and were represented by counsel at termination hearing). "Therefore, the court did not offend due process by refusing to

6

[grant a continuance and] arrange for the [father's] attendance at the hearing." *In the Interest of T. N. T.*, 258 Ga. App. at 399.

2. The father contends that the juvenile court erred in finding that there was clear and convincing evidence that he abandoned H. A. S. We agree with the father.

> On appeal from a juvenile court's decision to terminate parental rights, we review the evidence in the light most favorable to the court's decision and determine whether any rational trier of fact could have found by clear and convincing evidence that the parental rights should be terminated. In doing so, we do not weigh the evidence or resolve credibility issues, but merely determine whether a rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated.

(Punctuation and footnotes omitted.) *In the Interest of C. S.*, 354 Ga. App. 133, 136 (840 SE2d 475) (2020). In applying this deferential standard, we are mindful that "there is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously." (Punctuation and footnote omitted.) *In the Interest of E. G. L. B.*, 342 Ga. App. 839, 840 (805 SE2d 285) (2017).

Guided by this standard of review, we turn to the pertinent statutory framework. The decision to terminate parental rights is a two-step process. First, the

7

juvenile court must determine whether one of five statutory grounds for termination has been met. See OCGA § 15-11-310 (a). If one of the five grounds for termination has been established, the juvenile court then must determine whether termination of parental rights would be in the best interest of the child after considering certain factors. OCGA § 15-11-310 (b).

Here, the juvenile court found that termination was warranted because the father had subjected H. A. S. to aggravating circumstances by abandoning him. One of the five statutory grounds for termination is that "[t]he parent has subjected his or her child to aggravated circumstances." OCGA § 15-11-310 (a) (2). "Aggravated circumstances" include the circumstance where a parent has "abandoned" the child. OCGA § 15-11-2 (5) (A). And OCGA § 15-11-2 (a) defines "abandonment" or "abandoned" as "any conduct on the part of a parent, guardian, or legal custodian showing an intent to forgo parental duties or relinquish parental claims." The statute then provides examples of conduct by the parent that can be considered by the juvenile court,[6] but "[s]ignificantly, to constitute abandonment, the conduct must

_____

[6] OCGA § 15-11-2 provides:
    (1) "Abandonment" or "abandoned" means any conduct on the part of a parent, guardian, or legal custodian showing an intent to forgo parental duties or relinquish parental claims. Intent to forgo parental duties or relinquish parental claims may be evidenced by:

8

'actually show an intent to abandon in light of the rest of the record.'" *In the Interest of C. S.*, 354 Ga. App. at 137 (1), quoting *In the Interest of J. A. B.*, 336 Ga. App. 367, 370 (785 SE2d 43) (2016). It is against this legal backdrop that we consider the juvenile court's ruling in this case.

We conclude that the record does not support the juvenile court's finding that there was clear and convincing evidence that the father had abandoned H. A. S.

> (A) Failure, for a period of at least six months, to communicate meaningfully with a child;
>
> (B) Failure, for a period of at least six months, to maintain regular visitation with a child;
>
> (C) Leaving a child with another person without provision for his or her support for a period of at least six months;
>
> (D) Failure, for a period of at least six months, to participate in any court ordered plan or program designed to reunite a child's parent, guardian, or legal custodian with his or her child;
>
> (E) Leaving a child without affording means of identifying such child or his or her parent, guardian, or legal custodian and:
>
>> (i) The identity of such child's parent, guardian, or legal custodian cannot be ascertained despite diligent searching; and
>>
>> (ii) A parent, guardian, or legal custodian has not come forward to claim such child within three months following the finding of such child;
>
> (F) Being absent from the home of his or her child for a period of time that creates a substantial risk of serious harm to a child left in the home;
>
> (G) Failure to respond, for a period of at least six months, to notice of child protective proceedings; or
>
> (H) Any other conduct indicating an intent to forgo parental duties or relinquish parental claims.

during the approximately 15 months between when the child came into DFCS custody and the termination hearing. The uncontroverted evidence, as previously discussed, reflects that H. A. S. resided with his father for almost his entire life before the father's arrest. And the evidence further reflects that although the father could not visit the child or complete many aspects of his case plan while incarcerated, the father completed a prison substance abuse treatment program that was a condition for regaining custody of his child, finished two levels of parenting classes, and sent the letters to the child that were never delivered by DFCS. Nor is this a case where there was a showing that the father would be incarcerated for many years into the future, given that he completed his incarceration on the Dade County charges and the Tennessee charges remained unresolved. Under these circumstances, DFCS failed to carry its burden of proving by clear and convincing evidence that the father's conduct reflected an intent to abandon H. A. S., as required to support a finding of abandonment. See *In the Interest of J. A. B.*, 336 Ga. App. at 370 (record as a whole must reflect conduct by parent showing intent to abandon the child). See generally *In the Interest of T. Z. L.*, 325 Ga. App. 84, 94 (1) (a) (751 SE2d 854) (2013) (noting that "termination of parental rights is a remedy of last resort which can be sustained only when there is *clear and convincing evidence*" supporting the juvenile court's ruling)

10

(emphasis in original); *In the Interest of J. D. F.*, 277 Ga. App. 424, 429 (1) (626 SE2d 616) (2006) (incarceration alone was not sufficient to support termination of parental rights, particularly where incarcerated parent had made efforts to comply with case plan "clearly not designed" for someone in prison and the parent's release date was not shown to be "many years away"). Compare *Interest of M. M. D.*, __ Ga. App. __ (1) (848 SE2d 687) (2020) (abandonment found where, among other things, incarcerated father had "made no effort to communicate with child," despite having been provided contact information by DFCS); *In the Interest of C. S.*, 354 Ga. App. at 137-139 (1) (abandonment found where, among other things, incarcerated father had no contact with the child "for nearly three years," made no effort to enroll in rehabilitation program for drug abuse even though remaining drug free was a condition of seeing his child, and made no effort to send any letters or cards to the child) (emphasis omitted). Termination of the father's parental rights on the basis of the aggravated circumstance of abandonment thus was error.

In its petition to terminate the father's parental rights, DFCS also sought to terminate on the statutory ground of dependency due to lack of proper parental care

11

or control under OCGA § 15-11-310 (a) (5).[7] The juvenile court did not address this potential alternative basis for terminating the parental rights of the father and thus did not make any findings of fact or conclusions of law on that issue. Accordingly, we vacate the judgment and remand for the juvenile court to make appropriate findings of fact and conclusions of law regarding whether termination is warranted on the alternative ground of dependency due to lack of proper parental care or control under OCGA § 15-11-310 (a) (5). See *In the Interest of J. A. B.*, 336 Ga. App. at 371-372 (vacating termination order and remanding the case to juvenile court for more fully developed findings of fact and conclusions of law). On remand, the juvenile court may consider additional, more recent evidence relevant to this matter that may have occurred since the last hearing. See *In the Interest of K. M.*, 344 Ga. App. 838, 847

---

[7] OCGA § 15-11-310 (a) (5) sets out a ground for termination predicated on the dependency of the child where the juvenile court finds that the

> child is a dependent child due to lack of proper parental care or control by his or her parent, reasonable efforts to remedy the circumstances have been unsuccessful or were not required, such cause of dependency is likely to continue or will not likely be remedied in the reasonably foreseeable future, and: (A) Returning such child to his or her parent is likely to cause serious physical, mental, moral, or emotional harm to such child or threaten the physical safety or well-being of such child; or (B) Continuation of the parent and child relationship will cause or is likely to cause serious physical, mental, moral, or emotional harm to such child.

(2) (811 SE2d 505) (2018). "After a new judgment is entered on remand, the losing party shall be free to file another appeal." *In the Interest of R. S. T.*, 345 Ga. App. 300, 314 (4) (812 SE2d 614) (2018).

3. In light of our decision in Division 2 to vacate the judgment of the juvenile court and remand for further proceedings, we need not reach the question whether the juvenile court erred in finding that termination of the father's parental rights would be in the best interest of the child. See *In the Interest of E. G. L. B.*, 342 Ga. App. at 849 (2).

*Judgment vacated and case remanded with direction. Gobeil and Pipkin, JJ., concur*.