A07A1257. IN THE INTEREST OF D. P., a child.

(651 SE2d 110)

MIKELL, Judge.

The Murray County Department of Family and Children Services (the "Department") filed a petition to terminate the parental rights of E. P. and T. P. to their three-year-old daughter D. P. The juvenile court granted the petition following a hearing. Only the mother, T. P., appeals. We affirm.

> On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost. We do not weigh the evidence or determine the credibility of witnesses, but defer to the [juvenile] court's factfinding and affirm unless the evidence fails to satisfy the appellate standard of review.[1]

Properly viewed, the evidence shows that the mother had five children, none of whom was in her custody. On August 26, 2005, the juvenile court granted the Department immediate ex parte custody of D. P. and another child, G. H., due primarily to the mother's abuse of methamphetamine. Pursuant to an order entered on October 25, 2005, the court declared the children deprived, awarded custody of G. H. to his father, and granted temporary custody of D. P. to the Department. The mother failed a number of drug screens, and the Department filed a petition to terminate her parental rights to D. P. on August 17, 2006. A permanency order was entered five days later, changing the plan from reunification to adoption following termination of parental rights.

At the termination hearing, which was held on October 17, 2006, the mother testified that her four other children were aged eighteen, sixteen, fourteen, and seven; that the eldest had been adopted at birth by appellant's mother; that the second child had been in her father's custody since she was one year old; that the third child had been in her father's custody since she was four, and appellant had not seen her since she was seven; and that the fourth child, G. H., was in the Department's custody. The mother further testified that she has been diagnosed with bipolar disorder and schizophrenia and that she receives $681.33 per month in disability payments due to her mental illness. At the time of the hearing, she was preparing to divorce D. P.'s father, who seriously abused her. The mother was living with her

---

[1] (Footnotes omitted.) *In the Interest of F. C.*, 248 Ga. App. 675 (549 SE2d 125) (2001).

current boyfriend; her previous boyfriend was an alcoholic. She testified that she needed to get away from the alcohol because she had been a "terrible alcoholic" while growing up. The mother was arrested for being drunk and disorderly during a fireworks display on July 2, 2006. She admitted that she has abused methamphetamine, cocaine, and marijuana.

Missy Toney, a counselor who provided in-home services to the mother at the Department's request, testified that she focused on the mother's substance abuse problem after D. P. and G. H. were removed from the home; that the mother denied abusing drugs although she failed drug screens; that Toney explained to the mother how her drug use could impair her ability to parent; and that Toney's services were discontinued in February 2006, because the mother continued to fail drug tests. Toney also testified, however, that the mother had completed parenting classes.

Maureen Etheredge, the director of Family Hope and the visitation center where D. P. and her mother have supervised visits, testified favorably for the mother. According to Etheredge, the child is very anxious to see her mother; they love each other; and they are bonded. Etheredge testified that the visits occur either weekly or every other week for two hours each, and that the mother had missed only two visits in the previous year. However, Etheredge also testified that on one occasion, the mother appeared to be under the influence of drugs, and Etheredge notified the Department.

Kelli Hicks, D. P.'s caseworker, testified that the Department developed a case plan for reunification with the mother. The plan required the mother to obtain a substance abuse assessment, which, in turn, recommended inpatient treatment. The plan also required the mother to complete parenting classes, obtain stable and suitable housing, and remain drug and alcohol free. The mother did not receive inpatient treatment for her substance abuse problem and did not cease using drugs. Hicks testified that the mother failed for two weeks to keep an appointment with a nurse at an inpatient facility to be screened for tuberculosis in order to determine her eligibility for the program. Hicks also testified that the mother had tested positive for either methamphetamine or marijuana eight times during the twelve months preceding the hearing, including on September 18, 2006. According to the mother, she was informed during her substance abuse assessment at a different facility that she could not receive inpatient treatment because she took a prescribed medication, Xanax. However, she admitted that she has failed to remain drug free, and she testified that she attempted to commit suicide four years earlier. Moreover, the mother testified that although she sees a psychiatrist twice a month, she does not discuss with him any problems related to her ability to care for D. P.

Hicks testified that the child has been living in the same foster home since being removed from her mother's custody, that she has bonded with the foster parents, that they have expressed a desire to adopt her, and that adoption is the current plan for the child. Hicks testified that the child cries her eyes out every time the foster parents leave her in the Department's care.

The guardian ad litem expressed grave concerns about the mother's methamphetamine abuse and its effect upon her ability to parent D. P. He recommended termination of her parental rights. The juvenile court issued an order terminating the rights of both parents, and the mother appeals, raising four enumerations of error.

A juvenile court's termination of parental rights is a two-step process: The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.[2]

1. *Parental Misconduct or Inability.* Applying the four factors set out in OCGA § 15-11-94 (b) (4) (A) to this case, we find ample evidence to support the juvenile court's finding of parental misconduct or inability. We address each of the relevant factors in turn, construing the evidence in the light most favorable to the juvenile court's findings.

(a) *Deprivation.* Since the mother did not appeal the juvenile court's orders finding the child deprived, she is bound by that finding for purposes of the termination hearing.[3]

(b) *Lack of Parental Care or Control Caused the Deprivation.* In deciding whether the mother was able to provide adequately for the child's physical, mental, emotional, and moral needs, the juvenile

---

[2] (Footnote omitted.) *In the Interest of B. S.*, 283 Ga. App. 724-725 (642 SE2d 408) (2007).

[3] See *In the Interest of T. P.*, 270 Ga. App. 700, 704 (1) (608 SE2d 43) (2004).

court was authorized to consider several factors, including a medically verifiable mental health deficiency[4] and "[e]xcessive use of or history of chronic unrehabilitated abuse of . . . narcotic or dangerous drugs or controlled substances."[5] Here, the court found the existence of both factors. In her first enumeration of error, the mother argues that the juvenile court erred in relying on a psychological evaluation to find that she had a medically verifiable mental health deficiency that renders her incapable of caring for D. P.[6] Because the psychologist did not testify, the mother claims that reliance on such hearsay constitutes reversible error, even though she stipulated to the admissibility of the psychologist's report at the hearing and her counsel relied upon the report to establish that she had complied with the recommendation contained therein to continue seeing her psychiatrist.

We conclude that the court committed no reversible error. By stipulating to the admissibility of the report, the mother induced any error, and "one cannot complain of a judgment, order, or ruling that his own procedure or conduct procured or aided in causing."[7] Furthermore, the court was authorized to receive the report, because

> in all proceedings involving custody of a child, all information helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition.[8]

Finally, even if certain portions of the report on which the court relied lacked probative value, such reliance does not constitute reversible error, because the other evidence introduced at the hearing, excluding the hearsay, supports the juvenile court's findings and conclusions.[9]

---

[4] OCGA § 15-11-94 (b) (4) (B) (i). See *In the Interest of S. W. J. P. D.*, 279 Ga. App. 226, 229 (1) (b) (630 SE2d 824) (2006).

[5] OCGA § 15-11-94 (b) (4) (B) (ii). See *In the Interest of H. E. M. O.*, 281 Ga. App. 281, 285 (1) (b) (636 SE2d 47) (2006).

[6] OCGA § 15-11-94 (b) (4) (B) (i).

[7] (Punctuation and footnote omitted.) *Dameron v. State*, 267 Ga. App. 671, 672 (2) (601 SE2d 137) (2004). See also *Haralson v. Moore*, 236 Ga. 131, 132 (2) (223 SE2d 107) (1976) (where mother consented to superior court's consideration of juvenile court's report in determination of change of custody she could not complain report was based on hearsay).

[8] OCGA § 15-11-56 (a).

[9] *In the Interest of T. A. M.*, 280 Ga. App. 494, 499 (3) (634 SE2d 456) (2006); *In the Interest of O. J.*, 257 Ga. App. 1, 4 (2) (570 SE2d 79) (2002).

The mother's mental health deficiency was established by her testimony that she has been diagnosed with bipolar disorder and schizophrenia, that she takes medication as a result, that she has attempted suicide, and that she receives disability payments due to her mental illness. The report's conclusion that the mother has been unable to provide adequately for her children due to her mental illness is corroborated by evidence that she had four other children who were not in her care or support.[10] Competent clear and convincing evidence supports the juvenile court's finding as to this factor.

In addition, the court was authorized to find by clear and convincing evidence that the mother's chronic, unrehabilitated abuse of methamphetamine and marijuana rendered her incapable of providing for the needs of D. P., and that this lack of proper parental care or control was the cause of the child's deprivation.[11] The evidence recounted above shows that the mother's drug abuse was the reason D. P. and a sibling were removed from the home, that the mother repeatedly failed drug screens, which she blamed on her use of a prescription inhaler, and that she failed to take the steps necessary to secure inpatient treatment.

Further, in cases in which the child is not in the custody of the parent who is the subject of the termination proceeding, the juvenile court also must consider

> without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) To develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent or parents.[12]

In her second and third enumerations of error, the mother argues that the court erred in failing to consider whether she had bonded with D. P. and supported her, and erred in finding that she had failed to comply with the Department's reunification plan. The mother

---

[10] *In the Interest of H. E. M. O.*, supra; *In the Interest of A. C.*, 272 Ga. App. 165, 167 (1) (c) (611 SE2d 766) (2005); *In the Interest of S. L. B.*, 265 Ga. App. 684, 688 (1) (595 SE2d 370) (2004).

[11] *In the Interest of C. G.*, 279 Ga. App. 730, 732 (1) (632 SE2d 472) (2006); *In the Interest of D. J.*, 279 Ga. App. 355, 358 (2) (b) (631 SE2d 427) (2006); *In the Interest of K. W.*, 279 Ga. App. 319, 321-322 (631 SE2d 110) (2006) (mother's chronic abuse of methamphetamine supported deprivation order); *In the Interest of K. A. P.*, 277 Ga. App. 794, 796-797 (1) (b) (627 SE2d 857) (2006) (same).

[12] OCGA § 15-11-94 (b) (4) (C) (i)-(iii).

points to evidence that she bonded with the child and that the child receives a check drawn on her disability, so that the Department did not require her to pay support. But Etheredge, the director of the visitation center, admitted that she had never observed the mother with D. P. outside of a structured environment with supervisors in place to assist her. Etheredge also testified that she did not know the mother's history and that Etheredge contacted the Department after a visit in March 2006, when the mother appeared for a visit "under the influence of something[,] . . . alternating between agitation and lethargy." While the mother's adherence to a visitation schedule is commendable, "it is the juvenile court, and not this Court, that determines whether the mother's conduct warrants hope of rehabilitation."[13] Moreover, although the mother may have met some of the goals of her case plan, she failed to complete the most significant goal, which was to remain drug and alcohol free. In addition, the mother failed to meet the goal of obtaining stable and suitable housing for a six-month period, moving into three different residences with two different men, all while still married to E. P. Accordingly, the juvenile court did not err in finding that the mother had failed to comply with the case plan.

(c) *The Cause of the Child's Deprivation is Likely to Continue.* Evidence of the mother's past conduct may be considered in determining whether the deprivation is likely to continue.[14] It is telling that the mother has never successfully parented any of her five children alone. "The test in determining termination of parental rights is whether the mother, *ultimately standing alone*, is capable of mastering and utilizing the necessary skills to meet her parenting obligations."[15] Further, the mother's failure to address her drug problems, her continued inability to obtain and maintain stable housing, authorized the juvenile court to find that the cause of the deprivation is likely to continue. Moreover, the juvenile court was entitled to infer an adverse impact on D. P. if she were returned to her mother in light of the evidence of her chronic use of illegal drugs.[16]

(d) *Continued Deprivation is Likely to Cause Serious Harm to the Child.* Contrary to the mother's assertions in her fourth enumeration of error, the evidence presented during the termination hearing also supports the juvenile court's finding that the continued deprivation would cause serious harm to D. P. The mother's repeated failure to

---

[13] (Footnote omitted.) *In the Interest of B. D.*, 281 Ga. App. 725, 729-730 (4) (637 SE2d 123) (2006) (regarding whether deprivation likely to continue).

[14] *In the Interest of M. R.*, 282 Ga. App. 91, 99 (1) (637 SE2d 743) (2006).

[15] (Punctuation and footnote omitted; emphasis in original.) *In the Interest of T. W. O.*, 283 Ga. App. 771, 776 (1) (a) (iii) (643 SE2d 255) (2007).

[16] *In the Interest of K. W.*, supra at 321.

remain drug or alcohol free and D. P.'s need for a stable home were sufficient to prove that the continued deprivation would cause serious harm to the child.[17] It is well established that children need a permanent home and are likely to suffer emotional problems if they do not have a permanent home or emotional stability.[18] "Despite the fact that the mother appears to have a true bond with her [child] and has maintained constant and frequent contact with [her], the juvenile court was authorized to consider the [child's] need for a stable home situation and the detrimental effects of prolonged foster care."[19]

This case is distinguished from *In the Interest of K. J.*,[20] cited by the mother. In that case, the juvenile court's order failed to state any facts supporting the court's conclusion that continued deprivation would cause serious harm to the child.[21] In this case, the court did include in its order facts from which it concluded that continued deprivation would cause serious harm to the child; namely, the mere continuance of the parental relationship would serve as an impediment to D. P.'s future development because her foster parents wished to adopt her.

2. *Best Interest of the Child.* After finding clear and convincing evidence of parental misconduct or inability, the juvenile court must then determine whether termination of parental rights is in the child's best interest, considering her physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.[22] "The same evidence showing parental misconduct or inability may, and here does, establish this requirement."[23] Again, the mother's history of drug and alcohol abuse, her failure to obtain inpatient drug treatment, her inability to maintain stable housing, her failure to parent any of her children successfully, and the fact that D. P.'s foster parents plan to adopt her support the court's decision that termination of the mother's parental rights is in the child's best interest. "A juvenile court has broad discretion when determining what is in the best interests of the [child], and we will not reverse in the absence of manifest abuse of that discretion."[24]

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

---

[17] *In the Interest of A. B.*, 274 Ga. App. 230, 232 (617 SE2d 189) (2005).

[18] *In the Interest of T. W. O.*, supra at 777 (1) (a) (iv).

[19] (Punctuation and footnote omitted.) *In the Interest of N. M. H.*, 252 Ga. App. 353, 358 (556 SE2d 454) (2001).

[20] 226 Ga. App. 303 (486 SE2d 899) (1997).

[21] Id. at 307-308 (2) (b).

[22] OCGA § 15-11-94 (a).

[23] (Punctuation and footnote omitted.) *In the Interest of H. E. M. O.*, supra at 288 (2).

[24] (Citation omitted.) *In the Interest of A. B.*, 283 Ga. App. 131, 138 (2) (640 SE2d 702) (2006).

DECIDED AUGUST 9, 2007.

William L. Reilly, for appellant.

Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Cynthia N. Johnson, for appellee.