A07A1630. IN THE INTEREST OF A. G. et al., children.
(652 SE2d 616)

BERNES, Judge.

The mother of A. G. and U. O. appeals from the juvenile court's order terminating her parental rights. Appellant contends that there was insufficient evidence to support the juvenile court's findings. We disagree and affirm.

On appeal, we review the evidence in the light most favorable to the [trial] court's judgment in order to determine whether "any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Citation omitted.) *In the Interest of T. C.*, 282 Ga. App. 659, 660 (639 SE2d 601) (2006). We neither weigh evidence nor determine witness credibility, but defer to the trial court's findings of fact and affirm unless the appellate standard is not met. Id.

So viewed, the record reflects that on July 2, 2002, the Fulton County Department of Family and Children Services ("DFCS") filed a protective order complaint and deprivation petition on behalf of A. G., appellant's one-week-old daughter, after appellant tested positive for cocaine during her pregnancy. The juvenile court held a hearing and entered a consent protective order allowing appellant to retain custody of A. G. and her three siblings[1] if she entered into a substance abuse treatment program; completed it successfully; and maintained stable housing. The juvenile court conducted a review

---

[1] Although the appellant has a total of five children, this appeal deals only with the termination of her rights to A. G. and U. O.

hearing on November 15, 2002, and entered an order finding that appellant was cooperating with DFCS and working on her substance abuse program, although she was not attending regularly. The court allowed appellant to retain custody of A. G. and her siblings so long as she continued to progress in her treatment program and cooperate with DFCS.

On February 4, 2003, the juvenile court again held a hearing and entered an order finding that appellant had tested positive for cocaine and was having trouble complying with the requirements of her outpatient drug treatment program. The court allowed A. G. and her siblings to remain in appellant's custody, so long as she enrolled in and was compliant with drug treatment and remained drug free. Again on February 21, 2003, the juvenile court held a hearing and entered an order finding that appellant was not complying with drug treatment and was not cooperating with DFCS. The court nonetheless allowed A. G. and her siblings to remain with appellant on the conditions that appellant immediately enroll in a drug treatment program, remain drug free, and cooperate with DFCS.

Following a hearing on April 25, 2003, the juvenile court entered an order granting DFCS temporary custody of A. G. The juvenile court found that appellant was not enrolled in a drug treatment program and had refused the DFCS case manager access to her home.

On January 20, 2004, DFCS filed a deprivation petition as to A. G. and her siblings with the juvenile court, alleging that appellant failed to complete a drug treatment program or remain drug free; did not have stable housing; and was unable to financially provide for the children. The juvenile court held a hearing on the petition and issued an order finding that A. G. and her siblings continued to be deprived. In support of its deprivation finding, the court noted that appellant had not completed a drug treatment program or remained drug free, and did not have a stable home or employment.

On August 23, 2004, DFCS filed a motion for nonreunification. It alleged that appellant had failed to successfully complete a drug treatment program and remain drug free; failed to submit to random drug screens; failed to obtain stable housing or employment; and failed to complete parenting classes.

While the nonreunification motion as to A. G. and her siblings was pending in the juvenile court, appellant gave birth to another child, U. O., on October 12, 2004. Shortly after his birth, the juvenile court authorized shelter care for U. O. DFCS also filed a deprivation complaint alleging that, although U. O. had not been born with drugs in his system, A. G. and appellant's three other children were in DFCS custody and appellant had been "completely noncompliant" with her case plan and drug treatment. The juvenile court, however, found that U. O. was not deprived and dismissed the case.

On January 19, 2005, the juvenile court entered an order granting nonreunification on behalf of A. G. and three of her siblings, excluding U. O. The juvenile court found that appellant had not completed her case plan goals and, specifically, had failed to complete a drug treatment program or remain drug free; failed to submit to random drug screens; failed to obtain stable housing or employment; and failed to complete parenting classes.

DFCS again filed a deprivation complaint on behalf of U. O. on April 9, 2005, based upon allegations that appellant's roommate called the police believing that appellant had abandoned U. O. Appellant had left U. O. unattended with the sleeping roommate without first notifying the roommate that she was leaving. When appellant returned home, she appeared intoxicated. The juvenile court entered a probable cause order finding U. O. to be deprived and authorizing the child's removal to shelter care.

DFCS subsequently filed a deprivation petition on behalf of U. O., alleging that appellant had left U. O. unattended and that she had failed to complete her case plan goals regarding A. G. and her other children. DFCS served appellant notice of the proceedings by publication because her location was unknown. The case plan for U. O. also required that appellant attend drug treatment; provide stable housing; schedule and attend parenting classes; and continue working on her case plan for A. G. and the other children.

On June 10, 2005, DFCS filed a petition to terminate the parental rights of appellant as to A. G. and U. O., alleging that the children remained deprived because appellant continued to use and abuse illegal drugs, and otherwise failed to comply with her case plan goals without justifiable cause for more than a year prior to the termination petition.

While the termination petition was pending, the juvenile court held a final dispositional hearing on behalf of U. O., and ordered that DFCS be granted custody of the child. The juvenile court subsequently entered an order in which it found U. O. to be deprived.

On June 19, 2006, DFCS filed a second petition for termination of appellant's parental rights as to A. G. and U. O. The petition alleged that appellant continued to use and abuse illegal drugs and that she had failed to complete any of her case plan goals in order to reunify with her children. It further alleged that appellant had not communicated in a meaningful way with the children for over one year and had not visited them on a consistent basis.

The juvenile court conducted a hearing on the termination petition on February 21, 2007. At the hearing, a DFCS caseworker who had worked on the case from August 2003 through January 2006 testified that, during that time, appellant had not completed any of

her case plan goals, including successfully completing a drug treatment program, remaining drug free, obtaining stable housing or employment, or attending parenting classes. Appellant had scheduled monthly visits with the children but had missed eight during that time and never rescheduled them. Appellant never paid child support for the children and never gave them birthday or Christmas presents or cards. The caseworker also testified that she never noticed a bond between appellant and the children during the visitations, and that A. G. cried while visiting with appellant and did not interact well with her. The caseworker opined that appellant had "abandoned" the children because appellant had gone "about six to eight months" without contacting either the caseworker or the children. The caseworker recommended termination out of fear that "foster care drift" would have an adverse effect on the children.

A second DFCS caseworker who managed the case from July 2006 through the time of the hearing also testified. She stated that during that time, appellant had not worked to complete her case plan in any meaningful way. Appellant had visited the children only twice, having failed to show up for the majority of the visits which had been scheduled at her convenience. The caseworker further testified that she had observed no close attachment between appellant and her children.

On April 5, 2007, the juvenile court entered an order terminating appellant's parental rights to A. G. and U. O. The order included 37 individual findings of fact, including findings that appellant failed to complete a drug treatment program and continued to use illegal drugs; failed to submit to random drug screens; failed to obtain stable housing or employment; failed to enroll in and complete parenting classes; failed to communicate or attempt to communicate with the children; and failed to complete any other aspect of her reunification case plan without justifiable cause and for a period in excess of one year prior to the filing of the termination petition. It also found that appellant had abandoned care of the children to DFCS within the meaning of OCGA § 15-11-94. It is from this order that appellant appeals.

Termination of parental rights under OCGA § 15-11-94 requires the juvenile court to undertake a two-step process. First, the court must determine whether there is clear and convincing evidence of parental misconduct or inability as provided in OCGA § 15-11-94 (b). Under that Code section, parental misconduct or inability may be found when (1) a child is deprived; (2) the cause of the deprivation is lack of proper parental care or control; (3) such deprivation is likely to continue or not likely to be remedied; and (4) continued

deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If there is clear and convincing evidence of parental misconduct or inability, OCGA § 15-11-94 (a) then requires the court to consider whether terminating the parent's rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home.

(Footnote omitted.) *In the Interest of H. D. T.*, 273 Ga. App. 863 (616 SE2d 196) (2005). Alternatively, a court may terminate a parent's rights upon the showing that the parent abandoned the child. OCGA § 15-11-94 (b) (3).

Appellant contends on appeal that the evidence was insufficient to support the juvenile court's finding of parental misconduct or inability, arguing specifically that the state failed to show by clear and convincing evidence that A. G. and U. O. would continue to be deprived.[2] She also challenges the juvenile court's finding that she had abandoned the children.

1. Contrary to appellant's assertions, the evidence supports the juvenile court's finding that the children's deprivation was likely to continue and not be remedied. See OCGA § 15-11-94 (b) (4) (A) (iii). It is well established that a juvenile court can consider a parent's past conduct as evidence of present unfitness so as to conclude that the parent's persistent deprivation of his or her child is likely to continue. *In the Interest of E. J.*, 284 Ga. App. 814, 817 (644 SE2d 906) (2007); *In the Interest of A. M.*, 275 Ga. App. 630, 633 (2) (621 SE2d 567) (2005). "The juvenile court is not required to reunite the children with [a parent] in order to obtain current evidence of deprivation or neglect." (Citation and punctuation omitted.) *In the Interest of T. J.*, 281 Ga. App. 308, 312 (1) (636 SE2d 54) (2006).

At the time of the termination hearing, appellant had been given nearly five years and numerous chances to comply with her case plan, yet she failed to satisfy even one of the case plan goals. She had not completed a single drug treatment program, had not obtained stable housing or employment, and had not scheduled or attended parenting classes. Nor had she provided any financial support toward the children's care. This evidence in and of itself was sufficient to support the juvenile court's finding of parental unfitness that was likely to

---

[2] The mother does not challenge that A. G. and U. O. were deprived, that the deprivation was caused by lack of proper parental care or control, or that continued deprivation would likely cause harm to the children. See OCGA § 15-11-94 (b) (4) (A) (i), (ii), (iv). Nor does she challenge the juvenile court's finding that the termination of her parental rights was in her children's best interests. OCGA § 15-11-94 (a).

continue. *In the Interest of B. S.*, 274 Ga. App. 647, 650-651 (2) (618 SE2d 695) (2005) ("Repeated failure to comply with case plan goals may show that the cause of the deprivation is likely to continue.") (footnote omitted); *In the Interest of T. B.*, 267 Ga. App. 484, 486-487 (1) (600 SE2d 432) (2004) (a parent's failure to pay child support is compelling evidence that the parent is not an able parent).

Furthermore, when appellant gave birth to U. O., she had A. G. and three other children in DFCS custody and a nonreunification petition was pending. The fact that a mother has other children not in her care and not supported by her bolsters the conclusion that she will be unable to support and care for another child. See *In the Interest of S. L. B.*, 265 Ga. App. 684, 688 (1) (595 SE2d 370) (2004). The juvenile court nonetheless gave appellant yet another opportunity to prove herself a fit mother in the face of DFCS's attempt to remove U. O. from her care. But even when she faced the likelihood of losing parental rights to U. O. in addition to all of her other children, she continued to abuse drugs.

Based upon this evidence, we have little trouble concluding that appellant's long history of drug abuse, failure to complete her case plan goals, and repeated willingness to place her drug addiction over her children's needs provided clear and convincing evidence that the children's deprivation was likely to continue and not be remedied. *In the Interest of E. J.*, 284 Ga. App. at 817. While appellant has continued to abuse drugs, her children have been caught in limbo, without a permanent home. The law will not require them "to linger indefinitely in foster care." *In the Interest of S. S. G. A.*, 285 Ga. App. 276, 279 (1) (645 SE2d 724) (2007); *In the Interest of T. J.*, 281 Ga. App. at 312 (1). The record amply supports the trial court's determination of parental unfitness and termination of appellant's parental rights.

2. Appellant also contends that the trial court did not have sufficient evidence to find that she abandoned A. G. and U. O. pursuant to OCGA § 15-11-94 (b) (3). We need not consider this argument, however, because, as discussed in Division 1, the juvenile court properly found clear and convincing evidence of parental misconduct or inability based upon the factors set forth in OCGA § 15-11-94 (b) (4) (A), and the termination of appellant's parental rights was authorized under that finding. See *In the Interest of S. L. B.*, 265 Ga. App. at 689 (2).

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED OCTOBER 3, 2007.

*Curtis W. Miller*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Lytia G. Brown,* for appellee.

