662 S.E.2d 190 (2008)
In the Interest of U.G., a child.
No. A08A0848.
Court of Appeals of Georgia.
May 2, 2008.
*191 Curtis Wayne Miller, Lithonia, for Appellant.
Thurbert E. Baker, Atty. General, Shalen S. Nelson, Senior Asst. Atty. General, Virginia B. Fuller, Asst. Atty. General, Lytia Geiger Brown, for Appellee.
BERNES, Judge.
The juvenile court terminated the natural mother's rights to her eight-year-old daughter, U.G. The mother appeals, contending that the state failed to prove that termination of her rights was in the child's best interest and that the child was improperly placed with her paternal grandmother.[1] For the reasons that follow, we affirm.
On appeal [from an order terminating parental rights], we review the evidence in the light most favorable to the [juvenile] court's judgment in order to determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. We neither weigh evidence nor determine witness credibility, but defer to the [juvenile] court's findings of fact and affirm unless the appellate standard is not met.
(Citation and punctuation omitted.) In the Interest of A.G., 287 Ga.App. 732, 652 S.E.2d 616 (2007).
*192 So viewed, the record reflects that on April 29, 2003, U.G.,[2] then three years old, was taken into emergency shelter care because appellant had failed to undergo drug treatment in accordance with the terms of the juvenile court's previously entered consent protective order. The Fulton County Department of Family and Children Services ("DFCS") filed a deprivation petition as to U.G. in May 2003, alleging that U.G. was without proper parental care or supervision because appellant was abusing drugs and refusing drug treatment, was unemployed and had no income, and was unable to provide stable housing for U.G. The deprivation petition referenced appellant's refusal to comply with the prior protective order.
The juvenile court subsequently held a probable cause hearing, which appellant failed to attend. The court then entered an order holding that probable cause existed to find U.G. deprived, due in main part to appellant's refusal to comply with the prior protective order. The court awarded temporary legal custody of U.G. to DFCS.
The juvenile court conducted another hearing in August 2003. Appellant failed to attend the hearing, but was represented by counsel. Following the hearing, the juvenile court found that U.G. was deprived and without proper parental care or control due to appellant's continued abuse of illegal drugs, refusal to enroll in or complete any substance abuse treatment, failure to cooperate with DFCS, failure to secure employment, and inability to provide an adequate home or resources for U.G. The juvenile court further held that DFCS had made reasonable and significant efforts to preserve and unify the family, but that returning U.G. to appellant's care would be contrary to U.G.'s welfare.
On October 17, 2003, appellant agreed to comply with a reunification case plan which required her to demonstrate the ability to care for and supervise U.G.; become and remain alcohol and drug free for at least six months; submit to random drug screens and test negative; obtain and maintain a source of income to support U.G.; obtain and maintain suitable housing; schedule and attend parenting classes; attend all hearings, appointments, case plan reviews, and visits with U.G.; remain in communication with DFCS, notify it of any changes in address, phone numbers or job status, and contact DFCS to schedule appointments to discuss appellant's progress on case goals; and provide DFCS with names and locations of relatives and other resources.
The juvenile court held a review hearing on November 21, 2003, which appellant failed to attend. The court subsequently entered an order holding that appellant had not yet begun to comply with her case plan goals and had missed a scheduled visit with U.G., who was residing in a foster home. The court ordered that DFCS retain custody of U.G.
In March 2004, DFCS filed a motion for extension of the juvenile court order requesting continued custody of U.G. The motion alleged that the conditions of deprivation had not been alleviated in that appellant had failed to comply with the case plan goals. U.G. remained in a foster home. Appellant stipulated to the motion, admitting that the allegations were true, and the juvenile court granted the motion.
On August 23, 2004, DFCS filed a motion for nonreunification, asserting that U.G. had been taken into DFCS care as a result of appellant's failure to comply with the previously entered consent protective order. It further alleged that the conditions of deprivation had not been alleviated and that appellant had not completed her case plan goals. Prior to the hearing on the nonreunification motion, U.G. was transferred into the custody of her maternal aunt.
The hearing on the nonreunification motion was conducted in November 2004. Appellant attended and was represented by counsel. Appellant stipulated to DFCS's motion and admitted all allegations contained in the motion. The juvenile court held that DFCS had made reasonable and significant efforts to reunify U.G. with her mother but *193 that reunification would be detrimental to U.G. in light of her mother's repeated failures to achieve any of her case plan goals. U.G. remained in the placement of her maternal aunt.
DFCS was unable to locate appellant in March and April 2005 and filed an affidavit for publication in order to notify appellant of DFCS's petition to modify custody. It was determined that U.G.'s maternal aunt was unable to manage the child's needs, and DFCS was required to remove U.G. from her aunt's home and place her in a different foster home.
On June 10, 2005, DFCS filed a petition for termination of appellant's parental rights, noting that appellant had still failed to complete any of her case plan goals. The petition alleged further that, for a period in excess of one year prior to the filing of the petition, appellant had failed to make a bona fide attempt to communicate with U.G., failed to visit U.G. on a consistent basis, failed to provide for the care and support of U.G., and had abandoned U.G. to the care of DFCS.
Following a hearing in October 2005, the juvenile court again detailed appellant's failure to achieve her case plan goals. The juvenile court found that appellant was unable to provide U.G. with adequate care, control or supervision and had abandoned U.G. to DFCS. The court noted that U.G. was in a foster home and was "doing well." The court's order further stated that U.G.'s paternal grandmother desired to be considered as a placement resource and that DFCS had submitted a request for a home evaluation. Finally, the court concluded that termination of appellant's parental rights was proper for the purpose of adoption and that return of U.G. to appellant's home would be contrary to the welfare of the child.
In March 2006, the juvenile court issued an order detailing, again, that appellant had failed to remain drug free, submit to random drug screens, or complete parenting classes. The court stated that the permanent plan for U.G. was to find placement with a fit and willing relative and extended DFCS custody of U.G. in order to accomplish that purpose. In November 2006, U.G. was transferred into the custody of her paternal grandmother in Louisiana.
The juvenile court held a hearing on the motion to terminate appellant's parental rights on August 21, 2007. Appellant was not present but was represented by counsel. The DFCS caseworker testified that appellant still had not accomplished her case plan goalsshe had not remained drug free for any period of time; did not complete a drug treatment program; did not provide DFCS with any information regarding adequate housing or employment; and did not attend parenting classes. The caseworker further testified that U.G.'s paternal grandmother wanted permanent custody of U.G. and desired to adopt her. The caseworker testified that, in her opinion, termination of appellant's parental rights was in the best interest of U.G. because U.G. would have a sense of permanency and would not "be moved around." The juvenile court granted the motion to terminate appellant's parental rights and awarded permanent custody to DFCS for the purpose of adoption. This appeal followed.
1. Prior to terminating a parent's parental rights, the juvenile court must engage in a two-step analysis.
First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (a) the child is deprived; (b) the lack of proper parental care or control is the cause of the deprivation; (c) the cause of the deprivation is likely to continue; and (d) continued deprivation is likely to cause serious mental, physical, emotional, or moral harm to the child. If these four factors are present, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.
(Footnote omitted.) In the Interest of K.S., 289 Ga.App. 782, 786, 658 S.E.2d 403 (2008).
Appellant does not challenge the sufficiency of the evidence to establish parental misconduct or inability. See OCGA § 15-11-94(a), (b)(4)(A)(i)-(iv). She argues instead *194 that the state failed to prove by clear and convincing evidence that termination of her parental rights was in the best interest of U.G. She asserts, however, only that permanent placement of U.G. with her paternal grandmother was not in U.G.'s best interest. As an initial matter, we note that U.G. was placed in the custody of DFCS and the trial court rendered no decision as to whether the grandmother will be allowed to adopt. Moreover, the issue of placement is separate and apart from that of termination. See OCGA § 15-11-103. Hence, the question of whether U.G. is ultimately adopted by her paternal grandmother is irrelevant to a determination of whether U.G.'s best interests are served by termination of appellant's parental rights.
As conceded by appellant, she failed to accomplish a single goal on her case plan during U.G.'s four-and-one-half years in DFCS custody. Appellant has never provided any financial support for U.G. and has four other children in DFCS custody as result of her failure to care for them. At the time of the termination hearing, the trial court had terminated appellant's parental rights to at least two of those children. Appellant also failed to attend numerous hearings relevant to her case and failed to keep DFCS notified of her location. Evidence at the hearing further showed that U.G. was frequently moved from one home to another during the time that appellant was supposed to be working to accomplish her case plan goals, that U.G. was at risk of "foster care drift," and that U.G. now resides in the home of a relative who desires to adopt her.
This evidence authorized the juvenile court's finding that termination of appellant's rights was in the best interest of U.G., given U.G.'s "physical, mental, emotional, and moral condition and needs . . . including [her] need for a secure and stable home." OCGA § 15-11-94(a). See In the Interest of D.P., 287 Ga.App. 168, 174(2), 651 S.E.2d 110 (2007) (mother's history of drug abuse in conjunction with her failure to obtain drug treatment, inability to maintain stable housing, and failure to parent any of her children successfully evidenced that termination was in child's best interest when child resided in foster family desiring to adopt); In the Interest of A.G., 287 Ga.App. at 737(1), 652 S.E.2d 616 (the fact that a mother has other children in DFCS custody that she does not support or care for bolsters the conclusion that she will not be able to support and care for another child); In the Interest of R.N.H., 286 Ga.App. 737, 740-743(1), (2), 650 S.E.2d 397 (2007).
2. Appellant contends the state violated OCGA § 15-11-103(a)(1) by failing to include in the record evidence that it conducted a home study of the paternal grandmother. However, as explained in Division 1, the juvenile court awarded permanent custody to DFCS for the purpose of adoption, and expressly noted that the issue of whether the grandmother could serve as the permanent adoption placement would be addressed in the later proceedings. Therefore, the issue raised by appellant is not ripe for this Court's review. Cf. In the Interest of T.B., 288 Ga.App. 794, 797, 655 S.E.2d 680 (2007).
3. Appellant next argues that the evidence did not support the juvenile court's finding that she abandoned U.G. We need not consider this argument, however, in light of our conclusion in Division 1 that the juvenile court was otherwise authorized to terminate appellant's rights based upon OCGA § 15-11-94(a), (b)(4)(A). See In the Interest of A.G., 287 Ga.App. at 737(2), 652 S.E.2d 616.
4. Finally, appellant argues that the evidence was insufficient to terminate her parental rights because the record did not contain a copy of the consent protective order which ultimately led to the April 2003 removal of U.G. from Appellant's home. She also points out that the record failed to include the transcript of an April 2003 hearing related to the protective order. As discussed in Division 1, the evidence was sufficient to support the termination of appellant's parental rights. Moreover, appellant stipulated to the facts set forth in DFCS's motion for nonreunification, which alleged that appellant failed to comply with the terms of the protective order and that as a result, U.G. was removed from her custody. Thus, the documents *195 at issue were not necessary to establish the stipulated facts.
Judgment affirmed.
RUFFIN, P.J., and ANDREWS, J., concur.
NOTES
[1] U.G.'s natural father, whose parental rights were also terminated, is not a party to this appeal.
[2] U.G. has four other siblings who have also been removed from appellant's care but who are not at issue in this appeal.