**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 11, 2020**

# In the Court of Appeals of Georgia

A20A0893. IN THE INTEREST OF M. M. D., a child.            DO-031

DOYLE, Presiding Judge.

The putative father ("the Father") of M. M. D. appeals from an order of the Glynn County Juvenile Court terminating his parental rights. He contends that the juvenile court erred because (1) his incarceration alone was insufficient to support the termination; (2) he was not appointed counsel in time to file a petition for legitimacy; (3) he was not appointed counsel or served with process in the dependency proceeding prior to the termination; (4) an expert was allowed to testify as to the ultimate issue; and (5) the evidence of harm to the child was insufficient to support the termination. For the reasons that follow, we affirm.

The record shows that M. M. D. was born on July 18, 2015. Her mother, who lacked stable housing, executed a power of attorney in favor of the paternal

grandmother, who cared for M. M. D. in her home. In December 2015, the mother attempted to gain custody of M. M. D. by instigating a violent attack against the grandmother, and five-month-old M. M. D. was removed from the grandmother's home and placed in foster care. At that time and throughout these proceedings, the Father was incarcerated.[1]

A few days later, the Department of Family and Children Services ("DFCS") filed a dependency complaint alleging that M. M. D. and her one-year-old sister were dependent. At that time, the mother's whereabouts were unknown. In January 2016, the juvenile court entered an order finding M. M. D. to be dependent.[2] The order noted that the Father was incarcerated and stated that the Father had been notified by personal service, but proof of service does not appear to be in the record. The order directed DFCS to prepare a case plan for the Father, but it is not clear whether he

---

[1] The Father currently is incarcerated following a January 2016 guilty plea resulting in a 11.5-year prison sentence for conspiracy to possess a controlled substance with intent to distribute.

[2] The order also found dependent a total of three siblings whose cases had been consolidated. The Father in this case was not alleged to be the father of the other children.

actually received one.[3] Throughout the rest of 2016, a DFCS caseworker mailed certified letters to the Father on a monthly basis, explaining that M. M. D. was in care, a case plan had been developed, and he needed to demonstrate an interest in the child. The first letter was not delivered, but the remaining letters were. DFCS received no response from the Father.

In August 2017, DFCS petitioned for termination of the parental rights of both parents as to M. M. D. The Father was served on September 27, 2017. With respect to the Father, the petition alleged that he was incarcerated, had made no attempt to legitimate the child, had not supported the child, had not established a bond with the child, and had abandoned the child. In November 2017, the court entered an order appointing an attorney for the Father. Due to that attorney's subsequent maternity leave, a new attorney was appointed to represent the Father in January 2018. At the request of new counsel, the hearing on the termination was continued until March 2018, and the court continued the remainder of the hearing twice more, with the final hearing day concluding in January 2019, with the child now three and one-half years old and having had no contact with the Father. The Father was represented by counsel

---

[3] In June 2017, the court ordered a paternity test, but that test appears to be pending. The Father's name was returned in a search of the Putative Father Registry; his paternity is not challenged, nor is his standing to contest the termination.

and able to participate by telephone in hearing dates held on March and April of 2018 and in January of 2019.

Following the conclusion of the hearing, the juvenile court terminated the Father's parental rights, finding that he had abandoned M. M. D. and that M. M. D. was a dependent child due to lack of parental care and control. This Court granted the Father's application for discretionary review, and he now challenges the termination of his parental rights.

1. The Father contends that the termination was based solely on his incarceration, which was not a sufficient basis for the termination. This is belied by the record.

> On appeal from an order terminating parental rights, we review the evidence in the light most favorable to the juvenile court's judgment in order to determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. We neither weigh evidence nor determine witness credibility, but defer to the juvenile court's findings of fact and affirm unless the appellate standard is not met.[4]

---

[4] (Punctuation omitted.) *In the Interest of U. G.*, 291 Ga. App. 404, 404 (662 SE2d 190) (2008).

We begin with the statutory scheme authorizing termination of parental rights.

OCGA § 15-11-310 (a) provides that [when] considering the termination of parental rights, the court shall first determine whether one of the statutory grounds for termination of parental rights has been met. . . . One of those grounds is when a child is abandoned by his or her parent. Abandonment is defined as any conduct on the part of a parent . . . showing an intent to forgo parental duties or relinquish parental claims. Intent to forgo parental duties or relinquish parental claims may be evidenced by . . . failure, for a period of at least six months, to communicate meaningfully with a child; . . . failure, for a period of at least six months, to maintain regular visitation with a child; . . . leaving a child with another person without provision for his or her support for a period of at least six months; failure, for a period of at least six months, to participate in any court ordered plan or program designed to reunite a child's parent, guardian, or legal custodian with his or her child; [or] . . . any other conduct indicating an intent to forgo parental duties or relinquish parental claims.[5]

Here, the Father argues that the termination was based solely on his incarceration, which alone is not a sufficient reason to terminate his parental rights. It is true that

---

[5] (Citations and punctuation omitted.) *In the Interest of C. S.*, 354 Ga. App. 133, 136-137 (1) (840 SE2d 475) (2020).

a parent's incarceration does not *always* compel the termination of parental rights, but it can support a termination when sufficient aggravating circumstances are present. Those circumstances are present in this case. Indeed, one of the factors that may be considered is whether the incarcerated parent has made an effort to communicate with the child and, despite imprisonment, maintain a parental bond in a meaningful, supportive and parental manner.[6]

There was evidence that the Father made no effort to communicate with the child, DFCS, or the foster parents, nor did he attempt to provide financial support or gifts to the child. This was evident despite testimony from a DFCS caseworker who verified the Father's location and wrote monthly certified letters to him at the facility where he was incarcerated. Those letters provided contact information, but DFCS never received any attempted contact by the Father. Furthermore, there was evidence of the Father's repeated and continued incarceration due to five felony convictions from 2001 to 2016 and throughout the life of the child , such that establishing a bond would remain difficult absent substantial reform efforts on the part of the Father.[7] This evidence, combined with his lack of any effort to form a meaningful relationship

---

[6] (Footnotes and punctuation omitted; emphasis supplied.) Id. 138 (1).

[7] See id. at 138 (1). The Father's current expected release date is in 2025.

with the child, supported the juvenile court's finding of aggravated circumstances establishing the Father's abandonment of the child under OCGA § 15-11-310 (a) (4).[8]

2. The Father next contends that he was deprived of his right to establish standing to challenge the termination proceeding because he was not appointed counsel in time to file a timely petition to legitimate the child.[9] Under Georgia's old Juvenile Code, a putative father who had not legitimated his relationship lacked standing to challenge the termination of his parental rights.[10] But under the present

---

[8] See id. See also *In the Interest of T. Z. L.*, 325 Ga. App. 84, 95 (751 SE2d 854) (2013) ("Aggravating circumstances may also include a history of incarcerations for repeated criminal offenses and a determination that it is likely such criminal activity will continue upon release.") (punctuation omitted). The Father "does not challenge the substance of the court's finding that termination of his parental rights was in [M. M. D.'s] best interests, and thus, he has abandoned any such argument on appeal." *In the Interest of C. S.*, 354 Ga. App. at 140.

[9] See OCGA § 15-11-283 (b) ("The notice [of a termination petition] shall advise the biological father who is not the legal father that he may lose all rights to the child named in a petition . . . and will not be entitled to object to the termination of his rights to such child unless, within 30 days of receipt of notice, he files . . . :[a] petition to legitimate such child . . . .").

[10] See *In the Interest of S. B.*, 335 Ga. App. 1, 10 (2) (780 SE2d 520) (2015) ("Under the old Code, a nonlegitimated father lost all rights to his children and was not allowed to object to the termination of his parental rights."), citing former OCGA § 15-11-96 (h) and (i).

Code, applicable to this case,[11] the juvenile court has discretion as to whether to proceed with termination on the basis of a lack of legitimation. Here, the court exercised its discretion not to do so and appointed the Father an attorney so that he could participate in the termination proceedings on the merits with representation.[12] Furthermore, the juvenile court did not rely in whole or in part on the Father's failure to legitimate the child in its ultimate determination to terminate the Father's parental rights. Under the particular facts of this case, because the Father's inability to timely file a petition to legitimate did not prejudice him, we discern no basis for reversal on this ground.[13]

3. In his next enumeration, the Father makes a cursory argument that the juvenile court erred by adopting findings and orders determined in dependency

---

[11] See *In the Interest of C. S.*, 354 Ga. App. at 143 (3) (a) ("[O]n January 1, 2014, the relevant statutory provision was superseded by OCGA § 15-11-283. . . .").

[12] See id.

[13] Cf. id. (finding no prejudice in the context of a claim that the parent was denied effective assistance of counsel). Our holding in this Division is narrow and limited to the issue presented by the Father's enumerated error: whether the Father's inability to file a timely legitimation petition prejudiced him. Compare *In the Interest of J. M. B.*, 296 Ga. App. 786, 790-791 (676 SE2d 9) (2009) (concluding that the *total* and erroneous deprivation of the right to counsel in the termination hearing itself was presumptively harmful and therefore not subject to a harmless error analysis).

8

proceedings in which the Father was not served. The record reflects that the Father was not served in the dependency proceeding, but the juvenile court's written termination order nevertheless makes it clear that the termination was based on the Father's abandonment of the child. As noted in Division 1, the abandonment finding was predicated on the Father's ongoing lengthy incarceration aggravated by his history of repeated incarceration and the absence of any effort on his part to establish a bond with the child since contact by DFCS in 2016, including the time leading up to and including the 2018-2019 termination proceedings in accordance with OCGA §§ 15-11-310 (a) (4) and 15-11-2 (1).[14] Abandonment is an independent ground authorizing termination, and "if there is sufficient evidence supporting any one of [the statutory] grounds, we need not consider the other grounds [such as dependency] in order to affirm."[15] Accordingly, because the termination was supported by a finding of abandonment properly explained in the written order and authorized by the

---

[14] OCGA § 15-11-2 (1) (A) and (B) provide that abandonment can be evidenced by "[f]ailure, for a period of at least six months, to communicate meaningfully with a child . . . [or] to maintain regular visitation with a child."

[15] (Punctuation omitted.) *In the Interest of C. S.*, 354 Ga. App. at 141 (2).

9

evidence adduced at the termination hearing in which the Father participated with representation by counsel, this enumeration presents no basis for reversal.[16]

4. The Father also contends that the juvenile court erred by allowing DFCS's Attending County Director, Laurie Morton, to testify as an expert as to the ultimate issue in the termination case. The Father points to testimony by Morton based on her review of the case file as well as her training, expertise, and experience that in light of the Father's ongoing incarceration and unwillingness to bond with M. M. D., the child would be harmed by lingering in foster care and preventing adoption by the only care givers with whom she had bonded. The Father contends that Morton's testimony lacked a proper foundation, was inherently biased, and improperly addressed the ultimate issue.

(a) *Foundation.* When DFCS proffered Morton as an expert in child welfare, it elicited evidence that she had worked in the field of child welfare for 28 years, she had master's degrees in social work and sociology, she had worked every position in DFCS, she currently teaches sociology at the college level, and she has performed

---

[16] Cf. *In the Interest of H. B.*, 346 Ga. App. 163, 169 (2) (816 SE2d 313) (2018) (holding that no reversible error occurred because "[a] review of the juvenile court's order as a whole shows that its finding of dependency rested upon" proper evidence adduced at the hearing).

research specifically into child bonding and attachment as it relates to the foster system. With respect to this case, she had reviewed the file, interviewed the case worker, and observed the child in the foster parents' home. The Father's appellate argument as to Morton's qualifications is brief and conclusory, making no specific challenge to the qualifications in the record and lacking any citation to legal authority. To the extent he has not abandoned this argument,[17] based on the record before us, the Father has demonstrated no error in the juvenile court's exercise of discretion to accept Morton as an expert in child welfare.[18]

(b) *Bias*. With respect to any alleged bias on the part of Morton, "alleged bias on the part of an expert witness does not render the witness incompetent to testify, but instead goes to her credibility."[19] The juvenile court noted Morton's employment and

---

[17] See *Morton v. Macatee*, 345 Ga. App. 753, 757, n. 2 (815 SE2d 117) (2018) (collecting cases in which an unsupported argument was deemed abandoned); *In the Interest of G. Q.*, 328 Ga. App. 69, 77, n. 8 (761 SE2d 490) (2014) (unsupported argument deemed abandoned).

[18] Cf. *In the Interest of S. N. H.*, 300 Ga. App. 321, 332 (5) (f) (685 SE2d 290) (2009) (decided under former Juvenile and Evidence Code; affirming because the challenging party did not show that a witness was unqualified).

[19] *Walls v. Walls*, 291 Ga. 757, 758 (3) (732 SE2d 407) (2012), disapproved on other grounds by *McCarthy v. Ashment-McCarthy*, 295 Ga. 231, 233, n. 1 (758 SE2d 306) (2014).

11

extensive history working at DFCS, and explicitly noted "I am going to give [her testimony] the weight that's appropriate due to her being a state employee." Accordingly, the court was aware of the risk of bias and did not blindly accept Morton's testimony without regard for her employment at DFCS. "[D]uring a nonjury trial, it is presumed that the court is able to sift the wheat from the chaff and select only the legal evidence."[20] Based on the record before us, the Father has not identified any abuse of discretion in the treatment of Morton's testimony.

(c) *Ultimate issue*. The Father asserts that Morton improperly testified on the ultimate issue when she opined that M. M. D. would suffer harm by lingering in foster care. Her argument is predicated on the standards in OCGA § 15-11-310 (a) (5) for a finding of dependency. As explained below in Division 5, this issue is moot because the juvenile court was authorized to find and did find that the Father had abandoned M. M. D. pursuant to OCGA § 15-11-310 (a) (4). This alone was grounds for termination independent of any evidence of dependency.[21]

---

[20] (Punctuation omitted.) *In the Interest of T. J.*, 281 Ga. App. 673, 676 (2) (637 SE2d 75) (2006).

[21] *In the Interest of C. S.*, 354 Ga. App. at 141 (2).

5. Last, the Father contends that the evidence did not suffice to demonstrate a showing of harm.

> In doing so, [the Father] references the requirements of OCGA § 15-11-310 (a) (5), which, unlike [the abandonment requirements in] subsection (a) (4), requires a dependency determination. . . . But the different grounds for terminating parental rights under OCGA § 15-11-310 (a) are independent, and thus, on appeal, if there is sufficient evidence supporting any one of these grounds, we need not consider the other grounds in order to affirm. . . . Because we held in Division 1 . . . that the juvenile court did not err in finding that [the Father] abandoned [M. M. D.] within the meaning of OCGA § 15-11-310 (a) (4), we need not also address whether the termination of [the Father's] parental rights also satisfied the requirements of OCGA § 15-11-310 (a) (5).[22]

*Judgment affirmed. McFadden, C. J., and Hodges, J., concur.*

---

[22] (Punctuation and footnotes omitted.) Id.